RICHARD L. SMALLWOOD
vs.                     } SEPTEMBER TERM, 1853.
PETER D. HATTON.

[LOCATION OF BOND OF CONVEYANCE.]

A PARTY contracted to purchase for a gross sum, a tract of land containing one hundred acres, "be the same more or less." HELD—that these words so far qualified the representation of quantity as to preclude either party from any just claim to relief on account of deficiency or surplus, unless it be of such a character as to induce the belief of fraud or mistake.

The home line of tract of land as described in a bond of conveyance was, "*thence down said branch to the beginning.*" HELD—that this line must be run with the meanders of the branch, and not in a *straight* line to the beginning.

An order referring the cause to the Auditor, with directions to report the annual loss sustained by the plaintiff for the land claimed by him as embraced within the true location of his bond of conveyance and withheld by the defendant, is not a final adjudication that he is entitled to such land; it does not so settle the rights of the parties that an appeal would lie from it.

[The original bill in his case was filed by the complainant, Smallwood, on the equity side of Charles County Court, on the 30th of August, 1837. It alleges that a judgment was rendered against him at August term, 1836, of said County Court, in favor of the defendant, Hatton, for $350 and costs, a short copy of which is filed as an exhibit. That the cause of action on which the same was rendered, was a single bill given by him

in part payment of the purchase money, for a certain piece or parcel of land, called Friendship, which he had purchased of said Hatton, on the 26th of March, 1825, and took from him a bond of that date, to convey the same, which is also filed with the bill. That in virtue of this contract he took possession of part of the land mentioned in the bond, but that Hatton has always refused and prohibited him from using or occupying a part thereof, much the most fertile and valuable, contained between the last or given line and Piney Branch mentioned in the bond, which said Hatton has used and possessed himself. That complainant has repeatedly called on said Hatton to complete the contract and give him a good title to the land, which he has failed and refused to do. That $800 of the purchase money has been paid, and he is informed and believes that at no time before or since the contract, has Hatton been competent to make a good and sufficent title to him for this land, but that his title is incomplete, and that there are liens outstanding against it; that he has failed, when called on, to perfect the title and to give a good title to complainant. The bill further charges that a *fi. fa.* has been issued on said judgment, which is outstanding and may be levied on complainant's property, and then prays for an injunction restraining further proceedings thereon, until the title to the land can be made to complainant and he put in possession of the *whole* land according to the contract, and for a decree for an allowance for the part which has not been delivered to him, and for further relief.

Exhibit A., filed with this bill, was a short copy of the judgment against Smallwood, and was in favor of "Peter D. Hatton, use of Eleanor B. Hatton, administratrix of Nathaniel Hatton." Exhibit B., was the bond of conveyance for the land, signed by Hatton, and dated the 26th of March, 1825, in the penalty of $3000, conditioned for the conveyance to Smallwood of the land therein described. The description of the land in this bond is fully stated in the opinion of the Chancellor. The injunction was granted as prayed. The land as run out by the surveyor, by making the home line a straight line, contained 96 acres and 21 perches, but by running the said line with the

meanders of Piney Branch, there would be 14 acres 1 rood and 21 perches less.

The answer of Hatton to this bill was filed on the 17th of March, 1840, in which he admits the recovery of the judgment, and that the cause of action was a single bill for the purchase money for land which complainant purchased of respondent, and that two notes were given to secure the payment of said purchase money, and that he gave a bond of conveyance as charged in the bill. But he denies that complainant took possession of a part only of said tract of land, but he avers that he entered into and took possession of the whole thereof, and cultivated and used the same without any let or hindrance from defendant or any other person; he denies that he or any other person under his authority has used or possessed any part of said tract of land since the sale thereof to the complainant; he denies that complainant ever called upon him to complete the contract, or to give him a good title to the land, or asked of defendant a deed for the same. On the contrary, he avers that he has always been willing and ready to give complainant a good and valid deed therefor.

Commissions to take testimony were then issued, and proof taken and returned, and on the 19th of June, of 1844, Charles County Court, as a court of equity, passed an order referring the cause to the Auditor, "with directions to report the amount of the loss sustained annually by the complainant, by the withholding the use of the land lying west from the meanders of Piney Branch, and a straight line as laid down on the plat by the defendant, from the time when he threatened to sue the plaintiff if he cut wood thereon, and to take such testimony as may be offered by either party in relation thereto, and also to report the balance due on the original purchase."

The cause was afterwards, on the 27th of August, 1845, removed to the Court of Chancery upon the suggestion of the defendant, and no further proceedings were had therein until the 18th of October, 1852, when a petition was filed by Eleanor B. Hatton, which, together with all the subsequent proceedings, is fully stated in the following opinion of the Chancellor.]

8*

THE CHANCELLOR:

The main point in controversy in this case depends upon the true construction of the bond of conveyance, executed by Hatton to the complainant, on the 26th of March, 1825, for it must be conceded that parol proof cannot be allowed upon the pleadings to contradict or vary the terms of the agreement embodied in that instrument. The complainant is entitled to the land, and no more than the land which the proper location of the bond will give him.

He contracted to pay for it the round sum of fifteen hundred dollars, and though it is described as containing one hundred acres, the words "be the same more or less," must so far qualify the representation of quantity as to preclude either party from any just claim to relief on account of a deficiency or surplus. This case is stronger against the complainant's title to relief than that of *Jones* vs. *Plater*, 2 *Gill*, 125, because in the latter the land was to be paid for by the acre, and yet the representation of quantity being qualified by the words "more or less," the number of acres was not regarded as of the essence of the contract, and a deficiency, unless of such a character as to induce belief of fraud or mistake, furnished no ground for relief.

In this case to be sure the deficiency is much larger, but the land was not sold by the acre but for a sum *in solido*, and the circumstances are not such as to excite a suspicion of fraud. The proof shows that as early as the year 1826, the complainant had been warned not to cut wood upon or cultivate the land lying between Piney Branch and the straight line from B. to A., as located upon the plat, and that for many years it was in the possession and use of a third person, claiming under Hatton, and no complaint appears to have been made by the complainant, or any attempt to vindicate his title to that strip of land, until the year 1837, when he filed his bill in this case to stay execution on a judgment rendered against him for a portion of the purchase money at August term, 1836, of Charles County Court.

The plaintiff then having acquiesced for upwards of ten years in the defendant's construction of this contract, cannot now be

permitted to say he was defrauded. In point of fact he does not allege fraud in his bill, but insists that according to the true construction of this contract his purchase embraced the piece of land in question. The language of the bill is, that "the said Hatton has always refused and prohibited your orator from possessing, using or occupying a part of said land, much the most fertile and valuable, contained between the last given line and Piney Branch mentioned in said contract, but which he has used and possessed himself."

It is, therefore, simply a question of construction and location, and that of course depends upon the terms of the bond of conveyance. These terms are,

"That if the above bound Peter D. Hatton, his heirs or assigns, shall well and truly make to the said Richard L. Smallwood, his heirs or assigns, a good and sufficient *warranty* deed, to a certain tract or parcel of land lying in Charles county, and called by the name of Friendship, beginning from Piney Branch, where the road crosses to George Boswell's mill, thence with said road to the first branch of Mattawoman Swamp, thence up said branch to a ditch leading from the outer line of Friendship to Mattawoman, thence up the said ditch to the line of Friendship, thence with the said line to Piney Branch, thence down said branch to the beginning, containing one hundred acres of land, be the same more or less." And the sole question upon this part of the case is whether this last line described as running "thence down said branch to the beginning," shall pursue the meanderings of the branch or shall be a straight line to the beginning on Piney Branch.

A question, not unlike the present, came up in the Court of Appeals, in the case of *Thomas' Lessee* vs. *Godfrey et al,* 3 *Gill & Johns.,* 142. There the third line of the patent had a call to the main falls of the Patapsco, and from that point the description was "with the main falls by *a direct line* to the first bound tree." And the question was whether this last line should be run with the meanders of the stream or directly from the termination of the third line on the falls to the beginning tree. Upon this question the judgment of the court was, that the ex-

pressions "with the main falls" were so qualified by the other expressions, "*by a direct line*," as to show that the latter were intended as the controlling expressions, and consequently that the given line should be run directly from the place of departure to the beginning tree, the object imperatively called for, and that by the words "with the main falls," the general course of the stream was meant, the meanders of which could not be pursued by a single direct line.   But it is manifest from the reasoning of the court, that the survey would have been closed by pursuing the meanders of the stream but for the introduction of the words "*by a direct line*," which demonstrated that the meanders of the stream were not intended.

The expressions in this bond of conveyance are "thence with the said line to Piney Branch, thence down said branch to the beginning," not by a *direct line* to the beginning, and my opinion is, that "down the branch" and "with the branch" are equivalent terms, and not being qualified by any other terms, the given or home line must pursue the meanders of the branch, by which the survey can be as well closed as by a straight line, as is apparent upon the face of the plat.

But the complainants' counsel insists that this point, and indeed his title to relief, sought by his bill, has been adjudicated in his favor by Charles County Court, by the order of the 19th of June, 1844, referring the cause to the Auditor.

I do not so understand that order.   It instructs the Auditor to report the amount of loss sustained annually by the complainant, in consequence of the defendant's withholding from him the use of the land lying between the meanders of the stream and a straight line as laid down on the plat, and it is very probable when that order was passed, the court thought the complainant would be entitled to relief to the extent of such loss. But surely it is not a final adjudication to that effect.   It does not so settle the right of the parties that an appeal would lie from it.   The order of the Chancellor in the case of *Hogthorp* vs. *Hook*, 1 *Gill & Johns.*, 271, was far more precise and specific, and yet the Court of Appeals refused to entertain an appeal from it, saying, that however clearly the Chancellor may have

intimated his opinion, or declared his intention, the rights of the parties were unaffected by such declaration, it being competent to the Chancellor, in any subsequent stage of the cause, to change or abandon his opinion at his pleasure, or according to the dictates of his judgment upon further consideration.

The order, therefore, of the County Court of June, 1844, was no adjudication. It settled nothing, however plain the inference may be that in the opinion of the court at that time the complainant was entitled to a credit for the loss he may have sustained by the act complained of.

The purchase money of the land was fifteen hundred dollars, and the bill speaks only of payments amounting to eight hundred dollars, leaving of course seven hundred of the principal to be accounted for. The judgment against which the injunction was granted is for $350, with interest from the 30th of March, 1832. How the difference was paid, if paid at all, does not appear, but the judgment is all that is now claimed, and I can see no reason why this should not be paid, unless some good objection exists which has not yet been considered.

It appears by a short copy of the judgment which was filed as an exhibit with the bill, that it was entered for the use of Eleanor B. Hatton, administratrix of Nathaniel Hatton, but she was not made a party, and the cause having been removed to this court, she, on the 20th of October, 1852, filed a petition in which, after alleging that the cause of action was absolutely assigned to her for a valuable consideration, she prayed to be allowed to become a party and prosecute the cause, notwithstanding the death of Peter D. Hatton, who departed this life after the proceedings had been transferred to this court, the petition alleging the death of Hatton intestate, and that no administration had been had upon his estate. No cause to the contrary having been shown, after notice to the complainant, an order passed on the 14th of February, 1853, allowing the petitioner to appear and become a party defendant, with liberty to the complainant to file an amended bill without prejudice to the injunction as he might be advised, and reserving all questions touching the regularity of the proceedings and the merits of the cause for further consideration.

The complainant not having availed himself of the libery to amend his bill, the petitioner, on the 9th of June, 1853, filed another petition, in which, after alleging his neglect to do so, she asked that she might be heard on the merits, upon the pleadings and proofs as they then stood, and upon this petition an order was passed directing the cause to stand for hearing at the then ensuing July term.

After this, that is on the 31st of October following, the complainant filed an amended bill, in which, after stating the death of Peter D. Hatton, intestate, and that there was no administration upon his estate, he avers that the petitioner hath no interest in the judgment, her claim thereto being, as he alleges, fraudulent, and set up to deprive him of his right to relief against the same. The petitioner, Eleanor B. Hatton, is made a party to this amended bill, and she is required to answer it, but not under oath. She has answered it, maintaining that the assignment to her of the cause of action upon which the judgment was rendered, was *bona fide*, and for a valuable consideration, and there is no proof of the allegation to the contrary in the amended bill.

Under these circumstances, I am of opinion, that the complainant has not made out a title to be relieved against the judgment. The bond of conveyance is drawn most carelessly. It binds Hatton to convey the land to the complainant, but says nothing about the previous payment of the purchase money. Still, I suppose, a conveyance would not be decreed by a court of equity without payment or tender of the money, and I can see no sufficient reason for staying the collection of the money, unless upon a bill offering to pay the whole amount, upon the execution by the vendor of a deed in compliance with the condition of the bond and praying for an injunction to stay proceedings at law to enforce payment, until a deed with proper covenants should be executed. The present bill is not one of that character. It does not allege that the amount for which the judgment was rendered is the balance due for the land, and offer to pay it upon receiving a proper conveyance. It does, to be sure, make some loose objections to the title, but its alle-

gations in that respect are denied by the answer, and there is no attempt to support them by proof, except with regard to the portion of the land, which, as already decided, was not included in the purchase.

As the case is brought before me, I must assume, and do assume, that the note upon which the judgment at law was recovered, was assigned, *bona fide*, and for a valuable consideration, to Eleanor B. Hatton. It has not been alleged in the pleadings, or shown by the proof, that upon the payment of the judgment the plaintiff will be entitled to call for a conveyance. He does not place his case upon any such ground, and ask that the court will protect him against execution on the judgment until he is secure in his title to the land. The ground on which he applies for relief, is of a totally different character, and as has already been shown, he has failed in establishing it. The injunction will, therefore, be dissolved, and the bill dismissed.

RANDALL, for Complainant.
STOCKETT, for Defendants.