( Decided January 23rd, 1863.)

---

JULIANNA WILLIAMSON, AND OTHERS, *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

The Mayor and City Council of Baltimore, holding a certain lot of ground in said city, on a special trust created by deed, "as a place for the sepulture or burial for the poor and strangers dying within the city," filed a bill against the heirs at law of the grantor, then deceased, for a sale thereof, with a view of applying the proceeds to the purchase of a larger lot, to be used for a like purpose. The heirs at law, in their answers, objecting to the sale, and claiming the whole, on the ground that the lot being no longer used for the purposes of the trust, reverted to them, the parties agreed, by way of compromise, that the lot should be decreed to be sold, "one-half the net sales to be paid to the complainants, and one-half the net sales to be divided amongst the representatives of the grantor." HELD:

1st. That in the absence of all reference in the agreement to any lien or incumbrance, the term "*net sales*" will be taken to mean the proceeds of sale, after deducting the usual costs, commissions and expenses incident to a sale.

2nd. That the Mayor and City Council having, during such holding, paid a paving tax imposed upon the property held in its corporate capacity, the

lien of the tax no longer existed; or if the same had remained unpaid, they parted with their right to retain on that account, when to obtain the decree for a sale, they agreed to divide the net proceeds of sale.

APPEAL from the Equity Side of the Superior Court of Baltimore city.

The bill in this case was filed on the 16th of September 1850, by the appellees against the appellant, in the late Baltimore County Court, as a Court of Equity, and afterwards transferred to the Equity Side of the Superior Court of Baltimore city. The proceedings in the cause, as well as the arguments of the counsel on both sides, are set forth in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*T. Parkin Scott*, for the appellant.
*John L. Thomas, Jr.*, for the appellee.

BOWIE, C. J., delivered the opinion of this Court:

David Williamson, by his deed dated the 12th of June 1794, conveyed unto John Townsend and others a certain lot in the city of Baltimore, in trust for the sepulture and burial of the poor and strangers dying within the city.

No provision being made in the deed for the appointment of successors for the continuance of the trusts, the grantor and grantees, by deed dated 12th December 1798, conveyed the said lot to the Mayor and City Council, "to have and to hold the land and premises unto the Mayor and City Council and their successors forever, as a place for the sepulture and burial of poor persons and strangers dying in the city of Baltimore, and to and for no other use, intent or purpose."

The appellees filed their bill on the 16th September 1850, in the Superior Court, as a Court of Equity, setting forth

the above facts, and alleging that they had faithfully continued to perform the trust, until the rapid increase of the city around the premises, rendered it inexpedient; that wishing to perpetuate the benevolent object of the first conveyance, they have purchased a more spacious lot of ground situate beyond the limits of the city. They prayed that the appellants might be summoned to answer, and that the "Potters Field" might be sold under a decree of the Court.

The appellants, by their answer, admitted that the ground and premises referred to in the bill, were conveyed for the purposes charged, but insisted that whenever it ceased to be used for that purpose, it became forfeited to the heirs and representatives of the grantor.

On the 9th of June 1858, the parties, by their counsel, entered into the following agreement:

"It is agreed that a decree shall pass for a sale of the property, Grafton L. Dulany and T. Parkin Scott to be the trustees; one-half of the net sales to be paid to the complainants, and one-half the net sales to be divided amongst the representatives of David Williamson, senior, deceased. Terms of sale, one-third cash, and the balance in six and twelve months, with interest and security."

Upon this agreement a decree for the sale of the lands was passed, and the trustees required to bring into Court the proceeds, to be distributed under its order, after deducting commission and costs.

The sale being made, the auditor stated an account, distributing the proceeds, equally between the city and the representatives of Williamson, but charging the city with the amount of paving tax. The appellees excepted to the auditor's account; the Court below sustained their exceptions, and ordered the auditor to state another account, charging the whole fund with the amount of the paving tax, and dividing the balance between appellants and

appellees equally. From which order this appeal is taken.

At the hearing of the exceptions below, it was admitted that application was made by property holders (of which the Mayor and City Council was not one) binding on Orleans street, in 1857, for the paving of that street, and that it was accordingly paved during that year; but that no application was made by the defendants, or either of them, nor was their assent thereto asked or given; also, that the city used the property for other purposes than a burial ground, without the consent and without objection of the defendants.

The appellants contend the auditor's report was based upon the true interpretation of the agreement; according to which, having purchased their peace by surrendering their claim to one-half the net proceeds, they were entitled to the other, without deduction; that the paving tax was incurred whilst the city was in exclusive possession of the property, using it for other purposes than that mentioned in the deed; that the agreement of the 9th of June 1858, was a compromise of a disputed claim; that the paving tax was for work done by the city before the compromise, and the agreement contemplated an equal division of the proceeds of the property, as it was at the date of the agreement.

The appellees insist the paving tax was a lien on the property, which being sold for the benefit of both, each should bear an equal portion of the burthen of the tax; that the true construction of the agreement would include liens as well as expenses; that the tax was not incurred by the city, but imposed on the application of a majority of the property holders; and that the improvement enhanced the value of the property sold, and enured to the benefit of appellants as well as appellees.

In construing written instruments, the first and chief

object is, to ascertain the meaning of the parties and the intention as expressed, unless contravening some rule of law, is to be carried into effect. *Benson vs. Boteler*, 2 *Gill*, 74. *Jones vs. Plater*, 2 *Gill*, 125. A consideration of the relative position of the parties and the subject of the agreement, will perhaps enable us to arrive at the correct construction of its terms. The appellees held the land upon a special trust; they desired to sell it, and apply its proceeds to the same or some other use. To do this, it was necessary to make the appellants parties, and obtain their consent, or obtain a decree against their consent. They refused, and set up their claim to the whole. Their position, if tenable, was an insuperable obstacle to the appellee's prayer for relief. To avoid the risks of further litigation, the possibility of losing the whole, the parties agree the lands in controversy shall be sold, their respective solicitors appointed trustees, and one-half the net sales paid to the appellees, and one-half divided amongst the representatives of David Williamson, the appellants. "Net" is a relative term, depending for its force upon the context. There was no reference here to any lien or incumbrance existing on the property. The only idea conveyed by the term, in connection with sale, and in the absence of all other subjects, is that of the usual costs, commission and expenses incident to a sale.

The city, although not an actor in imposing the paving tax, but merely the agent of the property holders, was acting in this instance for itself, as property holder, and having paid the tax against property held in its corporate capacity, the lien no longer existed, or if it was unpaid, the Mayor and City Council parted with their right to retain on that account, when, to obtain the decree for sale, they agreed to divide the net proceeds. Upon any other interpretation, the appellants were giving up their rights without any apparent equivalent. For if this lien could come

53    v.19

in under the agreement, any other unascertained claim would, which might absorb the whole fund.

There is something definite and tangible, as well as equal, in the appellants' construction, but no mutuality or certainty in the converse. We think there was error in the order of the Court below, sustaining the exceptions of the appellees, and directing the auditor to state another account, charging the whole fund with the amount of the paving tax, and the same should be reversed, and the original audit ratified and confirmed. This cause is therefore remanded, for such other order or proceedings as may be necessary to conform with this opinion.

*Cause remanded.*

