WASHINGTON JONES, ET AL. *vs.* WILLIAM PLATER, ADM'R OF JOHN R. PLATER.—*December* 1844.

Upon a contract to sell a part of a tract of land called *G. Manor,* supposed to contain 988 1-2 acres, *more* or *less,* at the price of nine dollars per acre, the parties intended that the number of acres should be fixed by the contract, and not by subsequent measurement. Unless the words more or less lead to such a conclusion, they are useless and insensible; made in good faith, they qualify the representation of quantity.

A contract must be interpreted by its terms.

When a tract of land is sold, supposed to contain 998 1-2 acres, more or less, the number of acres is not of the essence of the contract; and a deficiency of 55 acres in such a case, is not of such a character as to induce belief of fraud or mistake.

APPEAL from the Court of Chancery.

The bill was filed by the appellee on the 9th October 1832, and alleged that *John R. Plater,* on the 30th November 1817, sold to a certain *John Darnall,* a part of a tract of land called "*Great Elkton Head Manor,*" containing 988½ acres, MORE or LESS, at and for the sum of $9 per acre, as per exhibit A. That *J. D.* paid a part of the purchase money, and died. The appellants were his personal representatives. The bill prayed a discovery of the assets of *Darnall's* estate, and payment of a balance of purchase money, after an account had between the representatives of the parties to the original contract, and in case of deficiency of personal assets, a sale of the land, the equitable title to which had descended to various minors and femes covert.

EXHIBIT A—*Filed with the Bill.*

This agreement and covenant between *John Rousby Plater,* of, &c., on the one part, and *John Darnall,* of &c., of the other: witnesseth, that the said *John R. Plater* sells to the said *John Darnall,* a part of a tract of land called *Great Elkton Head Manor,* including the mill seat and mill, supposed to contain nine hundred and ninety-eight and a half acres, *more or less,* at the price of nine dollars per acre. The said *Darnall* binds himself to make the following payments on the

1st January 1817, the sum of $2,000; and the balance of the purchase money in two equal annual payments, from the 1st January 1817, with the legal interest annually on the whole balance unpaid, and the aforesaid *J. R. Plater* obliges himself to convey in fee to the said *John Darnall*, on the payments being completed, each party having a copy of this bargain and agreement, dated this 30th day of November 1816.

J. R. PLATER,
JOHN DARNALL.

After the bill had been taken *pro confesso*, under an order of publication against some of the defendants, the answers of the infant defendants taken by guardian, others of the defendants answered the bill and admitted the contract of 1817, and alleged that a resurvey of the land was made by and with the consent of *J. R. P.*, about the 1st April 1829, by which it appeared the land contained 943, instead of 988½ acres. The defendants claimed a reduction in price for 55½ acres, at $9 per acre, and controverted the state of the accounts as mentioned in the bill of complaint, denying insufficiency of assets to pay the sum really due, but admitted there was nothing beyond that sum.

A commission was then issued, proof taken, and the cause referred to the auditor, who stated an account showing $2,355.23 due the complainants, on the basis of a sale of 989½ acres at $9.

It was agreed that the only question to be presented to the Chancellor was, whether the defendants were to be charged with the quantity of 998½ acres, at the price of $9, as claimed by the plaintiff, or with 943 acres as alleged by the defendant.

On the 2nd March 1843, the Chancellor (BLAND,) affirmed the auditor's report, and decreed, that unless the sum due should be paid by, &c., the land should be sold for the purpose of paying the complainant.

From this decree the defendant appealed.

The cause was argued before ARCHER, DORSEY, CHAMBERS, SPENCE, STONE and SEMMES, J.

Jones *vs.* Plater.—1844.

By A. RANDALL, for the appellants, who cited: 3 *Stark. Ev.* 1043, 1044; 5 *Cranch*, 234; 1 *Cain S. C. R.* 168; 18 *John.* 73; 5 *G. & J.* 147; 7 *G. & J.* 331; 4 *Wendell*, 58; 19 *Wendell*, 320; 11 *G. & J.* 314; 2 *Sto. Eq.* 53, 69; 15 *Ves. Jr.* 516; 1 *Ves. & Bea.* 524; 2 *John.* 37; 4 *Hen. & Mun.* 82; *Sugden on Ven.* 102.

By J. JOHNSON, for appellee, who cited: 4 *Mason*, 417; 1 *Ves. & Bea.* 375; 6 *Bin.* 102; 4 *G. & J.* 478, 488; 4 *H. & J.* 278; 6 *Harr. & John.* 24.

ARCHER, J., delivered the opinion of this court.

The determination of this case depends on the construction of the contract of the parties, of the 30th of November 1816. The question to be decided is, whether the parties intended that the number of acres should be fixed by the contract, at $998\frac{1}{2}$ acres, or whether it was designed that the quantity should be ascertained by measurement and paid for, according to the number of acres the land should actually contain? The words of the contract are: "the said *John R. Plater* sells to the said *John Darnall* a part of a tract of land called *Great Elkton Head Manor*, including the mill seat and the mill, supposed to contain $998\frac{1}{2}$ acres, more or less, at nine dollars per acre." The insertion in the contract of the terms *more or less*, induces us to believe it to be the intention of the parties that the land to be paid for was $998\frac{1}{2}$ acres; and not that the quantity to be paid for, was to be that which it should be found actually to contain. Unless the words *"more or less"* lead to such a conclusion, they are useless and insensible. The contract must be interpreted by its terms, and from an examination of its terms alone, we have arrived at the conclusion above stated.

If it were competent to look out of the instrument, the intention of the parties clearly appeared on the first of November 1816, by the agreement of that day, that the sale should be of $998\frac{1}{2}$ acres, at $9 per acre, whether it contained more or less; and we do not see in the agreement of the 30th, any

change of intention, although the design of the parties is not so clearly and decisively expressed. The letters of *Mr.* *Plater* if used in evidence, show nothing to the contrary; the land sold was part of a tract from which other sales had been made, and a survey was necessary to enable *Plater* to convey, as he would be bound to do on the payment of the purchase money. If he therefore joined in the survey, or aided in it, no inference against the above interpretation could be deduced from such conduct.

The land thus appears to have been sold by estimation; and so much is to be given by the acre for the quantity, *more or less*. The quantity of acres was manifestly not considered as of the essence of the contract, neither warranted on the one side, nor demanded on the other. The deficiency in the quantity is inconsiderable, and is not of such a character as to induce the belief of fraud or mistake. We cannot more intelligibly express our views, than in the language of *Judge Story*: " There is much good sense in holding that the words more or less, or other equivalent words, used in contracts or conveyances, should be construed to qualify the representation of quantity, in such a manner, that if made in good faith neither party should be entitled to any relief on account of a deficiency or of a surplus." 4 *Mas.* 417. We therefore think, this is no case, for an abatement of the purchase money.

The agreement in the record would seem to preclude the examination of any other questions, than those which we have examined.

**DECREE AFFIRMED.**