(Decided May 16th, 1860.)

## ELISHA J. HALL and WM. H. D. HALL *vs.* WM. E. MAYHEW.

A tract of land was purchased for a sum *in gross*. The title papers to which the purchaser was referred before completing his purchase, described the quantity as "being *estimated* to contain 482 acres and 32 perches, *be the same more or less.*" It was found to contain but 378 acres. HELD: that the purchaser was not entitled to an abatement for this deficiency.

Where quantity does not enter into the essence of the contract, the purchaser, in the absence of fraud or misrepresentation, is not entitled to an abatement; and where land is sold as containing so many acres, *more or less*, quantity does not enter into the essence of the contract of sale.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case, filed on the 8th of September 1856, by the appellants against the appellee, charges, that on the 9th of December 1851, the complainants noticed in the Baltimore Sun an advertisement for the sale of certain real estate in Baltimore county, called the "Ninevah Farm," described as containing "about 482 acres of land;" that they had no previous knowledge of the property, but on the afternoon of that day, made a hasty visit to it, with a view to purchase, and were on the property not longer than one or two hours,

and had no opportunity of ascertaining its boundaries, or the number of acres; that the next day they attended the sale at the Exchange, when the auctioneer, at the hour named in the advertisement, read the same and announced, verbally, that the title was indisputable, and that the terms of payment would be one-third in cash, one-third in one year, and one-third in two years, the credit payments to bear interest from the day of sale ; that complainants relying upon the truthfulness of this printed advertisement, and believing the property did contain about 482 acres, bid for and purchased the land at the price of $8250.

The bill further charges that up to the time of making this purchase, the complainants had no acquaintance with, or knowledge of the owners, but immediately after the sale were introduced by the auctioneer to John R. Jones as one of the parties interested, who explained to them that the property belonged to Wm. E. Mayhew, and that he, Jones, had a lease of it for three years, and that it had been sold on their joint account ; that on the same, or the next day, they called on Mayhew, and he told them the sale had been authorized by him, that he approved the sale and would execute the papers to consummate the purchase; that at the same time Mayhew stated to them that before he had anything to do with the property, he had caused the title papers to be fully examined by his counsel, and that his counsel had found every thing right; that complainants knew Mayhew from reputation, to be a man of honor and great business intelligence, and, therefore, greatly relied upon the representations made by him in regard to the property, and, for this reason, were not so particular as they otherwise would have been in making an investigation of the title and contents of the land; that on the 23rd of the same month of December, complainants, in accordance with their previous understanding with Mayhew and Jones, returned to Baltimore, for the purpose of making the first payment for the property, and obtaining the proper papers to be signed by Mayhew and Jones; that before the papers were executed and received by the complainants, and before they paid the cash payments, and gave their

notes to Mayhew for the other payments, the lease from
Mayhew to Jones, filed with the bill, (exhibit A,) was shown
them, in which the property was described as containing 482
acres and 32 perches, more or less; that complainants, de-
ceived as to the number of acres contained in the property,
first by the advertisement, published in the Sun as aforesaid,
by authority of Mayhew, secondly, by the verbal statement
by him to them made as aforesaid, and lastly, by the descrip-
tion given in Mayhew's lease to Jones, proceeded to fulfil
their part of the contract, paid the one-third of the purchase
money in cash, gave their notes to Mayhew for the residue,
and Mayhew signed and delivered to them the written con-
tract of sale, (exhibit B,) dated the 23rd of December 1851,
and Jones executed and delivered to them the conveyance
(exhibit C) of his leasehold interest in the property; that in
this written contract of sale Mayhew contracted to convey to
them, on payment of the notes given for the credit payments,
the property leased by him to Jones, by the lease, (exhibit A,)
by a deed in fee-simple, and clear of and discharged from the
rent and of all claim of Mayhew therein, and of all persons
claiming under him, and by this contract he, Mayhew, adopted
the description given by him of the property in said lease,
which described it as containing 482 acres and 32 perches,
more or less.

The bill further charges that, at the time of the sale at the
Exchange, and of the cash payment, and giving the notes to
Mayhew, as above stated, and for a long time afterwards,
complainants believed the property contained the quantity of
land represented by Mayhew, and it was this belief that in-
duced them to offer the price of $8250; that soon after the
23d of December 1851, they took possession of the farm,
and have continued in possession ever since, and have paid
all the purchase money, according to their contract, except
$566.16; that during the last twelve months, they were, for
various reasons, induced to doubt whether the farm contained
the quantity of land represented by Mayhew, as aforesaid,
and therefore refused to pay him this balance of the pur-
chase money, until the actual contents of the farm could be

ascertained; that, early last spring, they employed Augustus Boulden, a competent and skilful surveyor, to ascertain the number of acres, and that he has, by actual survey, ascertained that the farm contains only 378 acres, as appears by his certificate, (Exhibit D;) and the complainants aver and charge that the farm contains 104 acres less than was represented by Mayhew at the time of their purchase, and they are advised they are entitled to a ratable deduction from the price agreed to be paid, and that after such abatement, it will be found they have already overpaid Mayhew $1213 of the principal, besides overpayments of interest, and that he is their debtor to that amount, instead of their owing him the $566.16, claimed by him; that, after ascertaining this great deficiency, they refused to pay Mayhew the balance due on their note for the purchase money, and stated to him the reasons why they so refused, and requested him to deliver up the note, and execute and deliver to them a deed for the land, according to his contract, which he refuses to do, and demands payment in full of this balance, and has instituted an action at law for its recovery, in the Circuit Court for Baltimore county, and is about to prosecute the same to final judgment.

The prayer of the bill is for an injunction to restrain Mayhew from further prosecuting his said action at law, that he may be compelled, without delay or further payment, to execute to the complainants a deed, in fee-simple, for the the land, and may be further required to make an abatement from the price agreed on for the farm, proportionate to the deficiency in the actual contents thereof from the number of acres represented to be contained therein at the time of the purchase, and that he may be compelled to refund and return to the complainants the amount they have overpaid him, and for general relief.

Exhibit A, the lease from Mayhew to Jones, dated the 5th of February 1850, and duly recorded among the land records of Baltimore county, describes the land thus: "All that tract of land situate in Baltimore county aforesaid, called 'Ninevah,' as described in the patent thereof from the State of

Maryland to Charles Warfield, bearing date the 14th day of December 1829, and recorded among the records in the land office of the Western Shore, of the State of Maryland, in Liber G.G.B., No. 1, folio 122, &c., (excepting therefrom all those parts of said tract which were sold and conveyed by the said Charles Warfield, in his life time, to any person or persons whatever,) the part of said tract hereby demised, being estimated to contain four hundred and eighty-two acres and thirty-two perches, be the same more or less, and being the same part of the said tract that by indenture, bearing date this 5th day of February 1850, and intended to be recorded among the land records of Baltimore county aforesaid, was conveyed by the said John R. Jones, of J., and Rebecca his wife, to William E. Mayhew, his heirs and assigns, forever." This deed from Jones and wife to Mayhew, which was duly recorded, and is filed as an exhibit with the defendant's answer, describes the land in the same words; and, also, as "being the same part of said tract that by indenture, bearing date this 5th day of February, instant, was conveyed by Jesse Bennett, Jesse L. Warfield and James Pearre, as trustees, to the said John R. Jones, of J., his heirs and assigns."

The advertisement, filed as an exhibit with the bill, describes it: "That valuable farm, known as the Ninevah Farm, late the property of Charles Warfield, Esq.," situated, &c., "containing about 482 acres of land." The contract of the 23rd of December 1851, between Mayhew and the complainants, (exhibit B,) recites that Mayhew had heretofore demised to Jones, for the term of three years, "a certain parcel of land," lying in Baltimore county, at the yearly rent of $385, payable semi-annually, "as, by said lease, recorded," &c., (being the lease exhibit A,) appears; that Jones hath assigned the land to the complainants, who "have agreed to purchase the fee-simple from said Mayhew," &c., and then Mayhew contracts upon payment of the notes for the purchase money therein set out, that he "shall and will execute and deliver a deed in fee-simple, to" the said complainants, "their heirs and assigns, *for the tract of land aforesaid*, clear of and discharged from the rent aforesaid, and of all claim of said

William E. Mayhew, therein, and of all persons claiming under him."

The injunction was granted as prayed, and Mayhew then filed his answer, *under oath*, though not required by the bill so to answer, in which he states that Jones was, or professed to be, seized of the land mentioned in the proceedings, having acquired, or supposed he had acquired, the same by deed from Bennett and others to himself, dated the 5th of February 1850, and duly recorded; that respondent had advanced Jones the purchase money, or part of it, for this land, and Jones thus becoming indebted to him, and being also indebted to him on other accounts, the entire amount of such indebtedness being $6500, it was agreed between Jones and respondent, that respondent should have this land as security for repayment of this sum within three years thereafter, and in conformity with this agreement Jones, on the same day, conveyed the premises to respondent by deed, which is filed as an exhibit with the answer, and respondent executed the lease to Jones, referred to in the bill and filed as an exhibit therewith. He avers that it was the distinct agreement and understanding between Jones and himself, that on the punctual payment of the rent reserved by the lease, and of said sum of $6500, at the expiration of the term, respondent was to release and reconvey the premises to Jones. He was assured the land would be a good security for the payment of this sum, and, therefore, whilst he admits he caused the records to be examined for the purpose of satisfying himself that the title of the patentee of the land had been conveyed to Jones, he avers he made no inquiry as to possession or outlines, and knows nothing of its title or condition in reference to location other than he has learned from the records, and he refers to said deed as showing that the land conveyed consisted only of a part of a tract which has been patented by the name of "Ninevah," and that said part was *estimated* to contain the quantity of 482 acres and 32 perches of land.

The answer further states that Jones afterwards, being unable to provide for the punctual payment of the rents reserved

Hall, *et al.*, *vs.* Mayhew.

as aforesaid, or for some other cause becoming dissatisfied with said purchase, caused the advertisement of sale to be inserted in the Sun, and respondent has understood the land was sold thereunder to the complainants, as stated in the bill, but respondent avers he had nothing to do with the preparation of this notice of sale, nor with any explanations or representations made at the time or place of sale. He does not recollect whether Jones communicated to him his purpose to advertise the land, and if he did, respondent is very confident he did no more than consent that Jones should offer the land for sale, and require, in the event of a sale being effected, the purchaser should be informed of his claim, and that the purchaser and respondent should arrange for its payment to their mutual satisfaction. And, therefore, after the sale had been effected, Jones introduced the complainants to respondent, and the nature and extent of respondent's claim was fully explained to them, as well by Jones as respondent. This respondent admits that he may have stated in the course of this interview, or of some subsequent interview, that he had caused an examination to be made by his counsel of the title of said land, and that it had been found to be satisfactory; but the complainants must have understood, as the fact was, that his counsel had limited himself to the examination of the record of conveyances simply, and he avers positively that they understood that respondent claimed to hold the land only as security for the sum due him from Jones.

The answer then further admits the execution of the agreement of the 23rd of December 1851, and avers that it was prepared by the counsel for the complainants; that the complainants entered into possession of the premises shortly after the date of this agreement, and it was not until after the 28th of November 1855, that they gave respondent any information of any deficiency in the quantity of land sold, and, in the mean time, Jones had removed from Baltimore, and possibly from the State, leaving no property, and respondent can have no recovery over in the event of a recovery by complainants against him. He does not admit there is any deficiency. But should any appear, he denies that he is to

Hall, *et al.*, *vs.* Mayhew.

account for it, as it was understood, by all parties, that he held
the land only as security for the debt due by Jones to him;
that the purchase was effectively made of Jones, and re-
spondent's undertaking was no more than to relinquish his
interest in the land, on receipt of his claim.   He further in-
sists that the complainants have, by their laches, gross negli-
gence and delay, lost any equity which they might at any
time have claimed, if in truth they had any, against him.
And lastly, he insists that if the complainants are dissatisfied
with their purchase, and can show a right to complain, they
ought to be relieved by a rescission of the contract, and the
land ought to be returned to respondent, on payment by him
to them of the purchase money paid for the same.

A motion to dissolve the injunction was made and testi-
mony taken under the Act of 1835, ch. 380, sec. 8, to be
used at the hearing of this motion.   A commission was also
issued to take testimony to be used at the final hearing.   Be-
fore this latter commission was returned, the case was argued
on the motion to dissolve, and the court (KREBS, J.) deliv-
ered the following opinion accompanying the decree appealed
from:

"The relief, which the complainants ask in their bill, is
virtually an abatement, on account of deficiency in quantity,
from the purchase money, for a tract of land, the reversion in
which was to have been conveyed to them by the defendant.
This court cannot grant this relief to them, unless they are
entitled to it by the terms of the covenants on the part of
the defendant, contained in the instrument of writing filed by
them as exhibit B; for, whatever was the contract or recipro-
cal obligations growing out of the sale and purchase of this
property, as made at auction, at the Exchange, in the city of
Baltimore, the particulars of which are stated in the bill, I
am of opinion that they were altogether waived by the parties
when they gave to the transaction the shape which it took
when the assignment and agreement referred to in the pro-
ceedings were executed, and were in fact merged in that as-
signment and agreement.   And though the complainants, as
the assignees of Jones' leasehold estate, might have claimed

Hall, *et al.*, *vs.* Mayhew.

a conveyance from the defendant of the fee-simple in the property, clear of rent, by virtue of his covenant in the lease to Jones, yet they have thought proper to substitute for their rights under that covenant, a separate and independent agreement for such conveyance, upon terms differing somewhat from those provided in the lease; and they rest their claim to the relief which they pray, upon the obligations created by that agreement. In it the defendant, Mayhew, covenants that if the said Halls pay the promissory notes therein specified, he will execute and deliver to them a deed in fee-simple, clear and discharged from the rent aforesaid, and of all claim of the said Mayhew therein, and of all persons claiming under him, of a parcel of land lying in Baltimore county, which, as appears by the lease referred to, for a particular description, is described as '*All that tract of land* called '*Ninevah,*' *as described* in *the patent thereof* to *Charles Warfield,* &c., (excepting therefrom, *those parts of said tract which were* sold and *conveyed* by said *Warfield,* to *any person or persons whatsoever,*) the part of said tract, hereby demised, *being estimated* to *contain four hundred and eighty-two acres* and *thirty-two perches, be the same more or less.*' The complainants allege, 'that by said contract, he, the said Mayhew, adopted the description given by him of said property, in the lease aforesaid, which lease, as just stated, described it as containing 482 acres and 32 perches, *more or less,*' and it is because the defendant stated the quantity in these terms, that they claim a deduction from the purchase money, for a deficiency in the actual number of acres, which deficiency they allege, amounts to 104 acres. Assuming this deficiency to exist, are they entitled to relief?

" It is not necessary to look beyond the decisions of our own courts for the true import and effect of the terms, '*more or less,*' '*or estimated to contain,*' in contracts for the sale of lands. In *Jones vs. Plater*, 2 *Gill*, 128, the court adopts the law as stated in the words of *Judge Story*, in the case of *Stebbins vs. Eddy*, 4 *Mason*, 419: ' It seems to me that there is much good sense in holding that the words, '*more or less,*' or *other equivalent words*, in contracts or conveyances of this

sort, should be construed *to qualify* the *representation* of quantity in *such* a manner, *that* if *made in good faith, neither party will* be *entitled* to *any relief on account* of a *deficiency* or surplus.' 'Where the sale is fair, and the parties are equally innocent, and the quantity is sold by estimation and not by measurement, there is little, if any, hardship, and much convenience, in holding to the rule, *caveat emptor*. *Ibid.*, 420. In *Hurt vs. Stull*, 3 *Md. Ch. Dec.*, 26, the Chancellor says: 'If the representation of the quantity be *mere* matter of description, and not of *the essence of the contract*, as where there are qualifying words, as '*more or less*,' or '*by estimation*,' the *vendee must be understood* as *assuming upon himself* the *risk of the quantity*.' He also quotes the language of *Judge Story*, as above cited, and says, 'that *it must* be *regarded* as *establishing* the *law here*.' This decision was affirmed on appeal in 9 *Gill*, 451, where the court says, 'these words must be considered as qualifying the representation of quantity, and *neither party could claim relief* on account of a deficiency or a surplus.' So in *Smallwood vs. Hatton*, 4 *Md. Ch. Dec.*, 98, the Chancellor reiterates this statement of the law: 'though the land is described as containing one hundred acres, the words 'more or less,' must so far qualify the representation of quantity, as to preclude either party from any just claim to relief, on account of a deficiency or surplus.'

"In the case under consideration, as in those referred to, the land was sold for a gross sum, and described by metes and bounds, the description here being made certain and definite, by a report to the patent referred to in the lease. And further, in this contract, the representation of quantity is doubly qualified by the use both of the terms '*being estimated to contain*' and '*be the same more or less*.' In addition to this, a strong argument against any intention of the parties to define with precision the number of acres to be conveyed, and which presents itself on the face of the agreement, is derived from the phraseology of a part of the description, in which it is stated to be the tract of land called 'Ninevah,' as described in the patent, &c., excepting therefrom, '*those parts which*

Hall, *et al.*, *vs.* Mayhew.

*were sold* by Warfield to any person or persons whatsoever.'
A vendee, who takes a deed or covenant for the conveyance
of lands, with a description so loose, vague and indefinite as
this, coupled with the qualifying terms aforesaid, in regard to
quantity, does not come into court with a strong plea for re-
lief when he finds himself disappointed in the number of
acres that he has acquired.

"But though the rule is so well established, that where
the representation of quantity is thus qualified in good faith,
no relief will be given on account of deficiency or surplus,
yet it does not apply to the case of a willful or fraudulent
misrepresentation of quantity. This bill does not charge any
representation of that character, and if it did, the proceedings
furnish no proof of fraudulent representation of quantity, and,
in my opinion, show that, in point of fact, there was no re-
presentation whatever of quantity made by the defendant,
except the statement in the contract.

"Nor would this rule apply to 'cases in which the defi-
ciency, from its magnitude, would raise the presumption of
fraud, imposition or mistake, (3 *Md. Ch. Dec.*, 28,) such as
*Judge Story* refers to in the case above cited, where he says,
'that cases may occur of such *extreme deficiency* as to call
for relief, but they must be such as would *naturally* raise the
presumption of *fraud, imposition* or *mistake* in the *very es-
sence* of *the contract.*'

"No rule has yet been suggested for determining what
precise number of acres, less than the number stated with
these qualifying terms, should be regarded as a deficiency of
such magnitude as, *per se*, to be proof of mistake. In an
anonymous case, 2 *Freeman's Rep.*, 107, it is reported that
a case was cited, where a man conveyed his land by the quan-
tity of 100 *acres*, 'be it *more or less*,' and it was *not above* 60.
*Judge Story*, in the case above cited, says: 'the *latest cases*
generally *concur with the doctrine laid down in this anony-
mous case*,' thereby signifying that so large a deficiency as
nearly one-half is not of sufficient magnitude to show mistake,
fraud or imposition.' In the case of *Hurt vs. Stull*, above re-
ferred to, the deficiency was about one-sixth, and relief was

refused to the purchaser. In that of *Smallwood vs. Hatton*, the deficiency was very nearly one-fifth, and yet the vendee was allowed no abatement of purchase money. In this case, the alleged deficiency in the number of acres does not much exceed one-fifth. The opinion of *Judge Story* in the case above cited, from 4 *Mason*, has been regarded as of the highest authority upon these questions by our Maryland courts, and has been referred to by them in all the cases in which this subject has been considered, as clearly and accurately defining the law; and I find nowhere any statement of opinion approaching more nearly to a definite rule, than his language there expressed, viz., that 'the case must be one of such *extreme deficiency* as would naturally raise the presumption of fraud, imposition or *mistake in the very essence of the contract.*'

"Now the essence of the contract in this case, was a farm of a number of acres, 'more or less,' possession of which was actually delivered to them by the defendant, and which they occupied and used for the purposes for which they purchased it, for nearly five years, as appears from the statements in the bill, without discovering that it did not contain, as they allege, the full number of acres that they supposed they had purchased. It cannot be urged by the complainants with any force, under these circumstances, that there was a mistake in the '*very essence of this contract.*' Such a mistake would have been instantly discovered. Upon a full view, therefore, of the opinions expressed in the cases above cited, and considering the magnitude of the deficiency in the cases in which relief has been refused by our own and other courts, I cannot regard this court as at all justified in giving relief to these complainants, because, as they allege, there is a deficiency of one hundred and four acres in this parcel of land.

The only witness examined by the defendant has been objected to by the complainants on the ground of incompetency. I have not thought proper to inquire whether this objection should be sustained. This testimony is relied upon to show that the defendants should be regarded as selling, and the complainants as purchasing, only the equity of redemption of

a mortgagor, it being insisted by the defendant that the trans-action between himself and Jones, was nothing more than a mortgage security, notwithstanding the form that had been given to it, and that the complainants knew its character when they made the purchase. I am of opinion that this position could not be sustained against the complainants, be cause there was no transaction, in the nature of a security for a loan, between them and the defendant, and because he has thought proper, by a separate and independent agreement under seal, to put himself in the position of the vendor of the reversion in fee in these lands, to them, as the assignees of Jones' term for years, and to covenant to convey the premises to them, upon the terms specified, and therefore cannot alter the character of the transaction by parol evidence. I think, however, that the fact that such had been the nature of the transaction, might have been shown, by competent testimony, to have been made known to the complainants before the purchase, for the purpose of rebutting evidence, if there was any such in the record, tending to show that the defendant had actual knowledge that there was a deficiency in the quantity of land. The only other testimony in the case, is that of the witness for the complainants, which, in my judgment, proves nothing in support of their claim for relief, according to the view that the court has taken, under the circumstances of the case, of their rights, founded upon a proper construction of the force and effect of this contract. Being of opinion, therefore, that this court cannot, upon final hearing, grant to the complainants the relief that they pray, I must pass a de-cree in conformity to the views above expressed."

The court then passed a decree dissolving the injunction, and dismissing the bill, from which the complainants appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Coleman Yellott* for the appellants:

The argument below was upon the motion to dissolve the injunction, and that was the question before the court for its

decision. After this argument, and before the decision, a commission was issued to take testimony to be used at the final hearing, and this commission was still outstanding at the time of the passage of the decree appealed from. This decree states that the cause stood ready for hearing on the motion to dissolve the injunction, and as it appeared to the court that the complainants, upon their own showing in their bill, cannot entitle themselves to any relief at the final hearing of the cause, the injunction was dissolved, and the bill dismissed. In this state of the case, and on an appeal from such a decree, the averments in the bill must be assumed to be true, and the first question is, does the *bill itself* present a case entitling the complainants to relief? It is submitted that it does. It avers a deficiency of 104 acres in a sale of 482 acres and 32 perches; that Mayhew deceived the complainants not only by the advertisement of sale, but by the description of the land given in his written contract of the 23rd of December 1851; and that the complainants had no opportunity of ascertaining the number of acres at the time of the execution of this contract. Under these circumstances it is immaterial whether Mayhew *knew* of the deficiency, as mistake alone, in the absence of actual fraud, will entitle the complainants to relief. 1 *Story's Eq.*, sec. 193. 17 *Ves.*, 395, *Hill vs. Buckley.* 1 *Md. Rep.*, 147, *Marbury vs. Stonestreet.* *Atkinson on Titles*, 110, 116, in 20 *Law Lib.* 1 *Munford*, 330, *Hull vs. Cunningham.* 2 *H. & G.*, 358, *Anderson vs. Foulke.* 2 *Gill*, 125, *Jones vs. Plater.* 9 *Gill*, 446, *Stull vs. Hurt.* The description in the contract of sale, and in the lease, descending as it does to perches, is a *representation* of quantity amounting to a *warranty*, and quantity entered into the *essence of the contract*. It does not say simply 482 acres more or less, but 482 acres *and thirty two perches, be the same more or less.* In such a case, can it be said that the words *"more or less"* extend to a deficiency of nearly *one-fourth* in a sale of 482 acres of land? In none of the Maryland cases, on this subject, has the deficiency been in any thing like the *proportion* it is in this case, and it is believed no well considered case can be found

in which such a deficiency would not of itself, without actual fraud, entitle the purchaser to relief by abatement from the purchase money.

The relief to which the complainants are entitled is that prayed for in their bill, and not a rescission of the contract, which would not be granted unless prayed for by the complainants themselves.    17 *Ves.*, 401, 403, *Hill vs. Buckley.* 9 *Cranch*, 494, *Pratt, et al., vs. Law, et al.*    1 *Munford*, 338, and note.    In the decision of this case, Mayhew must be regarded as the *vendor*, and it is immaterial that Jones had a leasehold interest, or that there was an agreement between Mayhew and Jones, to the effect that Mayhew was a mere mortgagee.    The bill avers that Mayhew was the owner and that averment must be taken as true, and again by his contract of the 23rd of December 1851, he covenants to execute and deliver a deed, in fee-simple, for this land, and he is therefore estopped from denying that he was the real vendor. 1 *Greenlf. on Ev.*, sec. 275.

Under the circumstances of this case, the complainants were not guilty of *laches*, or of such delay in asserting their claim as will debar them from asking the relief prayed.    1 *Md. Rep.*, 437, 438, *Ijams vs. Hoffman.*    1 *Md. Ch. Dec.*, 501, *Taymon vs. Mitchell.*

*Thos. S. Alexander* for the appellee:

It is not pretended that the alleged deficiency was known to Mayhew, and that he falsely and fraudulently misrepresented the quantity of land proposed to be sold.    All the representations made by him, if any were in fact made, touching quantity, were honestly made.    The representation made was only to the effect that he, Mayhew, had caused the records to be searched and that the *title* to the land had thus been ascertained to be satisfactory.    In truth he did examine the record.    In truth the *title* is satisfactory.    And if it is to be assumed that any representation was made in regard to quantity, the records show that the quantity was correctly stated.    But a more satisfactory answer to the equity presented is, that the records are equally open to vendee as to

vendor, and general statements made in regard to what is or may be discovered from inspection of the records, if honestly made, do not constitute ground for vacating or varying an agreement between the parties. But the equity of the complainants must be found, if at all, in the representation embodied in the agreement. This agreement refers to the lease from Mayhew to Jones, and in that the land demised is described as part of *Ninevah*, *as described in the patent thereof*, being *estimated* to contain 482 acres and 32 perches, *be the same more or less*. It is insisted that there is no *warranty* to be implied from this description, as the purchase was of the *entire land* for a *gross sum*. In *Jones vs. Plater*, 2 *Gill*, 125, the sale was of part of a tract *supposed* to contain 998½ acres, *more or less*, at $9 per acre, and it was adjudged the vendor was not entitled to an allowance for deficiency. In *Stull vs. Hurt*, 9 *Gill*, 447, there was a sale of a farm or tract of land containing 173 acres, *more or less*, for the gross sum of $2300, and in this, as in the former case, it is declared, that, in the absence of any fraud, these words, *"more or less,"* must be considered as qualifying the representation of quantity, and neither party can claim relief for deficiency or surplus. We have in this case the words, *"estimated to contain,"* and *"more or less;"* these certainly qualify the representation of quantity. The case of *Marbury vs. Stonestreet*, 1 *Md. Rep.*, 147, relied on by the appellants, so far from reversing, sustains the previous decisions on this point. It is submitted, therefore, that the bill does not make out a case for relief. But even if they had ground for relief, the appellants have been guilty of *laches*, and by their delay have forfeited any equity they might originally have had.

LE GRAND, C. J., delivered the opinion of this court:

The bill, in this case, was filed for the two-fold purpose of having an abatement from the amount of the purchase money, agreed to be paid by the appellants for a tract of land, and the enjoining of the further prosecution of a suit at law, brought against them by the appellee for a part of said purchase money due and payable, agreeably to the terms of the

purchase.   The case was decided on a motion to dissolve an injunction which had been previously granted on the filing of the bill, and on affidavits taken under the Act of 1835, chapter 380.

The bill, in substance, charges, that the appellants became the purchasers of the land because of the statements contained in an advertisement, published in a newspaper called the "Baltimore Sun," and those made to them by the appellee, the ground of complaint being, that the land was believed by the appellants to contain 482 acres, when, by a survey by themselves caused to be made, it was found to contain but 378.   All the purchase money, with the exception of $566.16, had been paid before the filing of the bill.   To recover this residue, the action at law had been instituted by the appellee.

The history of the case, as disclosed by the record, is, that the property was that of one Jones, who being indebted to Mayhew, the appellee, and being unable to discharge his indebtedness, and desirous of obtaining a loan from the latter, agreed with him to convey the property to him and to take a lease for a term of years at a certain rent.   This transaction was viewed, by the parties to it, as one in the nature of a mortgage to secure the payment of the money due from Jones to the appellee.   The sale was at the instance of Jones, but with the approbation of the appellee.   Before the purchase was consummated these facts were made known to the appellant.

The appellee, in the agreement of sale executed by him, does not warrant or guaranty any number of acres.   He refers to the source of his own title, to wit, the deed from Jones, and his lease to Jones.   The deed from Jones to the appellee describes the land as: "All that tract * * * called Ninevah, as described in the patent thereof, * * * (excepting therefrom all those parts of said tract which were sold and conveyed by the said Charles Warfield, in his lifetime, to any person whatever,) the part of said tract hereby conveyed *being estimated* to contain 482 acres, 32 perches, *be the same more or less*."   The lease from the appellees describes the

land as *"being estimated* to contain 482 acres and 32 perches, *be the same more or less."*

There is no *fraud,* in fact, charged in the bill. Reliance being placed entirely upon the facts already stated, and the averment that the appellee had informed the appellants, that before he would have anything to do with the property, he had caused the records to be searched and found them to be satisfactory. But the bill admits, that *before* the payment of any part of the purchase money, or the giving of the notes on which the suit at law has been brought, *the lease from the appellee to Jones had been shown to them.*

The only question then before this court, on this appeal, is, are the appellants entitled to the relief asked upon the facts stated by themselves? We concur in opinion with the Circuit court, that they are not.

The property was not sold by the *acre,* but in *gross.* In Maryland the law is well settled, that where quantity does not enter into the *essence* of the contract, in the absence of fraud or misrepresentation, the purchaser is not entitled to an abatement.

Here the complainants were referred to the title papers, which contained no warranty of any precise number of acres, but which described the quantity by *estimation,* and by the words, *"more or less."*

In the case of *Jones vs. Plater,* 2 *Gill,* 125, and in the case of *Stull vs. Hurt & others,* 9 *Gill,* 446, it was held, in the absence of fraud or misrepresentation, that where land was sold as containing so many acres, *"more or less,"* quantity did not enter into the essence of the contract of sale. The same doctrine was held in *Marbury vs. Stonestreet,* 1 *Md. Rep.,* 152. That case is distinguished from this by the fact, that there, the property was described as *"containing by survey 669 acres,"* there being *"no qualifying expression, such as more or less, by estimation, &c."*

Concurring with the court below, that the complainants cannot succeed upon the case made in their bill, we approve its decree dissolving the injunction and dismissing the bill.

                                           *Decree affirmed.*

(Decided May 16th, 1860.)