## BRODSKY ET UX. *v.* HULL ET UX.

[No. 43, October Term, 1949.]

*Decided December 8, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Melvin J. Sykes*, with whom was *Harvey C. Bickel* on the brief, for appellants.

*T. K. Nelson Sterling*, with whom were *C. J. Hessian* and *John Wesley Smith* on the brief, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This is an action for damages for breach of a contract for the sale of a residence at 2820 Cheswolde Road in the city of Baltimore. The issue in this case is whether Louis H. Brodsky and wife, the purchasers, can recover from Charles H. Hull and wife, the sellers, the partial payment of $1,000 and other alleged damages.

The description of the property in the advertisement of C. Mayo Company, realtors, contained the words "about one acre lot." Plaintiffs came to see the property, which is located in the Mount Washington section, on July 31, 1948. On August 1 they came again, this time conferring with Bartley Green, of Towson, a representative of the real estate firm. Plaintiffs offered $18,500 for the property. That offer was accepted, and on August 2 Green submitted a contract for their approval. The instrument was a printed form with blank spaces filled in by typewriter. Brodsky testified that he objected to it because it did not state the area of the lot. He asserted that the lot was advertised in the newspaper as containing about an acre, and he refused to sign the contract unless it stated that he would receive about an acre. Green thereupon inserted in the contract in his own handwriting the words "one acre more or less". Plaintiffs then signed the contract and made the initial payment of

$1,000. It was subsequently discovered from an examination of the title and a survey of the lot that its actual area is only .465 of an acre. Prior to the date for settlement, plaintiffs notified defendants that on account of the deficiency in the acreage they would not pay the full price of $18,500. On August 31 defendants replied that time was of the essence of the contract, and that if settlement were not made as agreed within thirty days from the date of the contract, they would consider that plaintiffs had breached it and forfeited their deposit. On September 1 plaintiffs replied that they felt that, inasmuch as the area is only about a half acre, they should not be required to take the property. However, they said that they would accept it if an abatement of $1,500 were given on the price; but that if defendants would not give such an abatement, they demanded the return of the deposit.

Defendants, on the other hand, declared that there was no misrepresentation. Hull testified that he never knew the exact area of the lot, but thought it was somewhere between three-fourths of an acre and one acre. Mrs. Hull likewise testified that, while she knew where the boundary lines were, she did not know the acreage. Green testified that when he met the parties on August 1, Hull took Brodsky around the yard and pointed out the boundaries. He explained that the property was purely a residential one, and that the Brodskys wanted a home in a good neighborhood for themselves and their daughter. The contract described the property merely as "the two-story detached brick and clapboard cottage and one-car attached garage better known as 2820 Cheswolde Road." Green testified that Brodsky suggested that there ought to be something in the contract about the ground; and he replied: "That's true. We think it's about an acre. We don't know exactly. So let's put approximately, more or less, and he agreed on that."

The trial judge, in his charge to the jury, instructed them that the question was whether the statement that the lot was "one acre more or less" was made by defen-

dants fraudulently and for the purpose of deceiving plaintiffs into signing the contract. The judge then told the jury: "If you find that the statement in the contract was not made for the purpose of deceiving the Brodskys, but was made in good faith by the Hulls, that they thought they had an acre of land there and that they were able to convey what the Brodskys saw, when they saw the property twice before the contract was made, and that they offered to convey within the time limited by the contract, then your verdict will be for the defendants."

With that instruction the jury brought in a verdict in favor of defendants. Plaintiffs have appealed here from the judgment entered upon the verdict.

It is the contention of plaintiffs that the judge committed prejudicial error in failing to instruct the jury: (1) that the magnitude of the deficiency in acreage might be a basis for a finding of fraud; and (2) that a seller who makes a reckless assertion as to acreage is guilty of fraud when he knows that he does not possess sufficient information to justify his assertion and that his assertion will be relied upon by the purchaser.

It is a firmly established rule in this State that where it appears by definite boundaries, or by words of qualification, such as "more or less," in a contract of sale that the statement of the quantity of land is mere estimation and description, and not of the essence of the contract, the buyer takes the risk of quantity, and is not entitled to an abatement of price on account of a deficiency, in the absence of fraud. *Jones v. Plater*, 2 Gill 125, 128, 41 Am. Dec. 408; *Stull v. Hurtt*, 9 Gill 446, 451; *Hall v. Mayhew*, 15 Md. 551, 568; *Slothower v. Gordon*, 23 Md. 1, 10; *Tyson v. Hardesty*, 29 Md. 305; *Jenkins v. Bolgiano*, 53 Md. 407, 420; *Baltimore Permanent Building & Land Society v. Smith*, 54 Md. 187, 203, 39 Am. Rep. 374; *Cohen v. Numsen*, 104 Md. 676, 65 A. 432; *Wagner v. Goodrich*, 148 Md. 318, 129 A. 364; *Musselman v. Moxley*, 152 Md. 13, 136 A. 48; *Neavitt v. Lightner*, 155 Md. 365, 142 A. 109; *Kriel v. Cullison*, 165 Md. 402, 409, 169 A. 203. This rule does not bar an action of deceit for

fraudulent misrepresentation of quantity, or a suit in equity for rescission of contract or abatement of purchase price for innocent misrepresentation or mutual mistake. It is also true that in some cases an unreasonably large deficiency in quantity may be an indication of fraud.

The instant case is not a suit for abatement of price on the ground of mutual mistake. It is a suit for damages for breach of contract on the ground of fraud. It is not clear how even a fraudulent misrepresentation which induces the making of a contract could constitute a breach of the contract. This question of fraud, however, was submitted to the jury and was decided in favor of defendants. The mere statement of "one acre more or less" in the contract and the subsequent discovery that the lot contains only about a half acre did not constitute evidence of fraud. It is clear that the transaction was free of any fraudulent misrepresentation. It is true that the law is established in this State that if a vendor knowingly tells a falsehood, or makes a positive representation of a fact as true, when he does not know it to be true and has no reasonable grounds for believing it to be true, and thereby intentionally induces the purchaser to enter into a contract which but for such misrepresentation he would not have entered into, the purchaser can maintain a suit for the injuries sustained. Thus it is not necessary in every case to show that the vendor knew at the time that his representation was false; it is sufficient if he makes the statement for a fraudulent purpose and without a *bona fide* belief in its truth, with the intention of inducing the purchaser to act, and the purchaser relies upon the representation, which turns out to be false to the damage of the purchaser. *Cahill v. Applegarth*, 98 Md. 493, 56 A. 2d 794; *Robertson v. Parks*, 76 Md. 118, 24 A. 411; *Babb v. Bolyard*, 194 Md. 603, 72 A. 2d 13.

On the other hand, reliance upon either a fraudulent or an innocent misrepresentation of fact in a business transaction is justifiable only if the fact misrepresented is material. A fact is material if (1) its existence or

nonexistence is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction, or (2) the maker of the representation knows that its recipient is likely to regard the fact as important although a reasonable man would not so regard it. 3 *Restatement, Torts,* sec. 538; *Clark v. Kirsner,* 196 Md. 52, 74 A. 2d 830.

We concede that a statement of the quantity of land is a statement of fact, not of opinion. Moreover, it is generally true that a purchaser is entitled to assume that the seller knows the acreage of the land which he is selling. Even the words "more or less" accompaning a statement of quantity do not make the statement one of opinion. But in this case plaintiffs inspected the lot in question on two consecutive days and had ample opportunity to ascertain its area and, if they desired, to estimate its acreage. There was no misrepresentation either fraudulent or innocent. The purchasers were shown the property, and with their acquiescence the area was estimated to be one acre, more or less, and the sale was for a gross sum. In view of these facts the trial judge's instruction to the jury was sufficient, if the question of fraud was properly an issue at all in this suit for breach of contract.

Finding no prejudicial error in the judge's instruction, we will affirm the judgment entered in favor of defendants.

*Judgment affirmed, with costs.*

MARBURY, C. J., filed the following dissenting opinion, in which COLLINS, J., concurred.

Justice Holmes once admonished: "To rest upon a formula is a slumber that, prolonged, means death." To this statement, Justice Frankfurter, in his concurring opinion in *Kovacs v. Cooper,* 336 U. S. 77, 69 S. Ct. 448, 458, 93 L. Ed. 513, added: "Such a formula makes for mechanical jurisprudence."

Merely because the words "more or less", standing unexplained, have been construed by this court for more

than one hundred years to mean that the parties to a contract assume the risk of the quantity of land sold, does not bind us to adopt them as a formula in every case. In the case of *Kriel v. Cullison,* 165 Md. 402, pages 411-412, 169 A. 203, decided in 1933, where all the earlier cases are discussed at length, this court stated that the principle decided by them was that the words "more or less", when used to qualify a representation of quantity in a contract to convey land will be construed "as indicating an intention on the part of the parties to the contract to assume the risk of quantity, which, until rebutted by evidence of a different intent *inherent in the instrument or extrinsic to it,* will be recognized and enforced." (Emphasis supplied.) The words, therefore, are not sacrosanct, but are subject to extrinsic proof of the intention of the parties.

In this case, the purchaser, after he had seen the property, although he could not tell its size by looking at it, refused to sign a contract for its purchase unless the quantity of land was mentioned. The advertisement which caused him to go to see it said: "About 1 acre lot." The representative of the sellers inserted in the contract the words: "1 acre, more or less", and thereafter the appellant signed it and paid the deposit. There is no dispute about this, nor is there any dispute that, upon a survey, it was found that the actual area of the lot was only .465 of an acre. Whatever may have been his reasons (and there may have been many), it is clear that the purchaser was not willing to buy the property unless he got about an acre of land with it. Had the real estate agent written the word "about" instead of the words "more or less", the case would fall clearly within the decision in *Baltimore Permanent B. & L. Society v. Smith,* 54 Md. 187, where the court said in a case in which a sale was made of about 65 acres, and the survey showed the land contained only 36: "The force of the qualifying word, we think, is simply that while the parties did not bind themselves to the precise quantity of 65 acres, it imports that the actual quantity is a mere

approximation to that mentioned, that is to say, within a fraction of an acre, or perhaps it might cover a discrepancy of one or two acres."

There is no magic in the words "more or less", so that a vendee, ignorant of legal terms, can be bound by those words when, if the word used had been "about", a different situation would exist. That is not the law, and it could not be the law. What the law says is that the use of such words as "more or less", or "about", or "estimated" indicates that the purchaser is not so concerned about the exact acreage that he cannot be compelled to take the property if the acreage falls short, but this is subject to proof that if the intention is clearly otherwise, then the approximate amount of land must be delivered, or else there is no sale. This court has not rested its decisions upon a formula. In one of the very early cases, *Hurt v. Stull,* 3 Maryland Ch. 24, 28, decided in 1849, Chancellor Johnson referred to the case of *Jones v. Plater,* 2 Gill 125, which had quoted with approval Judge Story in *Stebbins v. Eddy,* 4 Mason 414, 417, 22 Fed. Cas. No. 13,342. The chancellor said this established the law of the State, but he added the significant words: "There may no doubt be cases in which the deficiency, from its magnitude, would raise the presumption of fraud, imposition or mistake, and in such cases, the words 'more or less' would not be permitted to stand in the way of relief."

This is such a case, and the jury should not have been restricted by the court's charge to find actual fraud, but, on the contrary, should have been permitted to consider whether, under the circumstances, fraud, imposition or mistake could be presumed. The judgment should be reversed.

Judge COLLINS authorizes me to say that he joins in this opinion.