526 A.2d 626

John G. GOETTEE, Personal Representative of the Estate
of Elvira B. Chaney

v.

Marshall K. STEELE, III, et al.

No. 1322, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 9, 1987.

Ronald H. Jarashow (William A. Franch and Franch, Earnest & Cowdrey, P.A., on brief), Annapolis, for appellant.

James P. Nolan (Kevin M. Schaeffer and Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for appellees.

Argued before BISHOP, ROBERT M. BELL and POLLITT, JJ.

BISHOP, Judge.

Appellees Marshall K. Steele and Stephen E. Faust brought a suit for declaratory judgment against appellant John G. Goettee, Personal Representative of the Estate of Elvira B. Chaney. Appellees requested that the Circuit Court for Anne Arundel County declare as valid and enforceable by specific performance a contract to purchase real property from Chaney's estate. The parties executed the contract on July 3, 1985. In a nonjury trial, the circuit court ruled that the appellees were the equitable owners of the subject property and that the appellees could enforce the July 3, 1985 contract by specific performance.

On appeal, Goettee raises the following issues:

I. Whether the property description is reasonably certain to enforce the contract;

II. Whether the Giddings Avenue boundary lines are within two feet of one fence so as to satisfy the contract contingency;

III.  Whether there is mutual mistake over property size and sale terms;

IV.  Whether the evidence shows knowledge and intent of appellees different from appellant so that the contract is not enforceable.

## FACTS

As an attorney and certified public accountant, appellant represented Mrs. Elvira B. Chaney in various matters from the 1950's until her death in February of 1985.  According to her last will, she appointed appellant as personal representative of her estate and directed him to sell, among other things, all her real property.  The parcel, located in West Annapolis at the corner of Giddings Avenue and Forbes Street, constituted all of her real property.

Upon Mrs. Chaney's death, appellant listed the property with a real estate agent and obtained numerous documents describing the land.  At the time that he executed the contract, appellant had certain documents in his possession. First, an appraisal that he acquired dated March 25, 1985, described the total square footage of the parcel at 14,502.-92.[1]  Second, a tax map that he obtained indicated that the parcel was "approximately 15,000 square feet."  Third, a 1952 survey that he obtained measured the parcel's size at about 17,300 square feet.  And finally, he received a feasibility study, dated April 16, 1985, which indicated that "there appears to be a boundary problem and/or deed discrepancy that can only be resolved by a field survey."

These documents indicated that the estimated size of the parcel ranged from 14,500 to 17,300 square feet.  Although the exact size of the property remained in question, no evidence existed in the record that would have suggested to appellant that its size exceeded this range.  Based on this information, appellant described the parcel in his real estate

---

1.  Because this figure was based upon a pre–1940 survey, the appraiser suggested a new survey be conducted.

listing agreement as containing 15,650 square feet, more or less.

In early May 1985, appellant began negotiating with appellees, two orthopedic surgeons who currently conduct their practice in a building situated directly across Giddings Avenue from the subject property. Hoping to purchase the subject property and build a new building for their practice, appellees offered to buy the property for $279,500.00. In their contract for sale, the doctors described the property as

16,000 square feet, more or less, together with improvements thereon located at 716 Giddings Avenue, Forbes Street, Annapolis, Maryland, as further described in the Land Records of Anne Arundel County, at Liber_____, Folio_____.

Appellant, however, rejected appellees' offer, stating that

we expect to receive more than $18.00 per square foot for this property and have listed it with a real estate broker for $395,000.00. We may not receive a contract for that amount, but we thought we would wait a reasonable time to see what surfaces.

Several weeks later, appellees contacted Mr. Goettee by telephone and inquired about the status of the property. Upon learning that no substantive offers had materialized, appellees again expressed their interest in the land and on July 3, 1985, resubmitted a contract for sale in the amount of $300,000.00. Appellant accepted the contract and a downpayment of ten thousand dollars.

Since there was some uncertainty as to the precise boundaries of the parcel, the parties agreed to make the sale "contingent upon the completion of a survey showing that the actual boundaries of the property are within 2 feet of the fence surrounding the tract." Several days after the execution of the contract, a survey was performed which indicated that the size of the property was much greater than the 16,000 square feet figure recited in the contract. According to the survey, the property was actually 22,047 square feet, exceeding the contract figure by forty percent.

Learning of this enormous discrepancy in the size of the property, appellant immediately contacted appellees and requested the sale price be adjusted upward to reflect the increased square footage. When appellees refused, Goettee in turn refused to complete the transaction under the contract. Seeking specific performance, appellees filed an action for declaratory judgment in the Circuit Court for Anne Arundel County.

### Legal Implications of "More or Less"

In its opinion, the circuit court found that the sale of the property was in gross, and not by the acre. The court based its conclusion on both the "more or less" language within the real estate contract and the extrinsic manifestations of the parties during their negotiations. Appellate review of such matters is limited; we may not set aside factual findings of the lower court unless they were clearly erroneous. Md.Rule 1086. Even though we reverse, our review of the record indicates that there was sufficient evidence to support this factual conclusion of the court.

The court, however, went on to explain the legal significance of a contract in which the parties qualify the quantity term with the "more or less" language. Quoting *Jenkins v. Bolgiano*, 53 Md. 407, 420 (1880) (quoting 4 Kent at 467), the court pointed out that

> "[w]henever it appears by definite boundaries or by words of qualification, as 'more or less' or as 'containing by estimation,' or the like, that the statement of the quantity of acres in the deed, is mere matter of description, or not of the essence of the contract, the buyer takes the risk of the quantity if there be no intermixture of fraud in the case."

Relying on this precedent, the circuit court then fashioned a *per se* rule in which a court must, in absence of fraud, enforce an in gross contract regardless of any deficiency or excess in quantity and regardless of other mitigating circumstances. We think the court overstated the rule. Because this overstatement has serious repercussions to the

outcome of this case and is dispositive, we address this fundamental issue.

■ Generally speaking, real estate contracts fall into two classes: sale by the acre and sale in gross. In a sale by acre, the parties have identified the quantity or size of the parcel as a material element of their agreement. The purchaser does not assume the risk of any deficiency while the vendor assumes no risk of an excess. If a discrepancy occurs between the quantity recited in the contract or deed and that conveyed, the court possesses broad equitable powers to rescind or reform the contract. In contrast, the focus of an in gross contract is on the identification of realty conveyed; the acreage or quantity of land is immaterial and thus a nonessential term of the contract. Under such a contract, each party assumes the risk as to the actual quantity conveyed. Accordingly, the court possesses no equitable powers in most circumstances to fashion an equitable remedy for either vendor or purchaser. *See* 77 AM.JUR.2D *Vendor and Purchaser* §§ 88–106 (1975); 91–92 C.J.S. *Vendor & Purchaser* §§ 162, 245–49 (1955); Annotation, *Relief by Way of Recission or Adjustment of Purchase Price for Mutual Mistake as to Quantity of Land, Where the Sale is in Gross,* 1 A.L.R.2d 9 (1948).

For the most part, courts in Maryland have adhered closely to these legal principles. On numerous occasions, the Court of Appeals has enforced real estate contracts as written, holding that the "more or less" language signified the parties' intent to assume the risk as to quantity. *E.g. Brodsky v. Hull,* 196 Md. 509, 77 A.2d 156 (1950); *Neavitt v. Lightner,* 155 Md. 365, 142 A. 109 (1928); *Wagner v. Goodrich,* 148 Md. 318, 129 A. 364 (1925); *Cohen v. Numsen,* 104 Md. 676, 65 A. 432 (1906); *Jenkins v. Bolgiano,* 53 Md. 407 (1880); *Tyson v. Hardesty,* 29 Md. 305 (1868); *Slothower v. Gordon,* 23 Md. 1 (1865); *Stull v. Hurt,* 9 Gill 446 (1851); *Jones v. Plater,* 2 Gill 125 (1844). A *per se* enforcement of all in gross contracts as written, however, has never been the rule in Maryland. On several occasions, the court has allowed the abatement of price when the sale

was in gross. *E.g. Kriel v. Cullison,* 165 Md. 402, 406, 414–15, 169 A. 203 (1933) (upholding the trial court's abatement of $561.50 for the deficiency in a contract conveying "forty-five acres, more or less"); *Reigart v. Fisher,* 149 Md. 336, 348–49, 131 A. 568 (1925) (ordering a two thousand dollar abatement for shortage in a contract conveying seven acres more or less).

In addition, the court has taken great pains in construing qualifying phrases such as "more or less," "about," or "approximately" in a manner that will minimize the harsh effects of an in gross contract. No longer does the mere presence of these qualifiers irrefutably establish that the parties intended to hazard the risk of excess or deficiency however great. For example, the court in *Witmer v. Bloom,* 265 Md. 173, 288 A.2d 323 (1972) held that the term "more or less" is only a strong indicator of the parties' intent to assume "the risk of quantity; and that the presumption could be rebutted by other evidence." *Witmer,* 265 Md. at 180, 288 A.2d 323; *accord Kriel,* 165 Md. at 411–12, 169 A. 203. To determine whether a sale in gross exists thus hinges on the facts and circumstances of the particular case. *Witmer,* 265 Md. at 180, 288 A.2d 323; *Carozza v. Peacock Land Corporation,* 231 Md. 112, 116, 188 A.2d 917 (1963). Similarly, the court has construed the qualifier's "approximately" and "about" as signifying sales by the acre in which the parties intend to risk only a small variation. *E.g. Carozza,* 231 Md. at 117–18, 188 A.2d 917 (holding that the phrase "approximately 330 feet on York Road" is not sufficient to render the transaction an in gross sale); *Balitmore Permanent Building and Land Society v. Smith,* 54 Md. 187, 204 (1880) (holding that phrase "containing about sixty-five acres" does not bind the parties to that exact amount, but only allows a discrepancy of "a fraction of an acre, or perhaps ... one or two acres").

Even when the court has refused to allow rescission or adjustment in the purchase price, it has issued the warning that qualifying phrases such as "more or less" should not provide a universal haven or refuge against all personal

liability. Just as there are limitations to assumption of risk in tort law, *see, e.g., F.S. Royster Guano Company v. State,* 130 Md. 170, 176, 100 A. 104 (1917) (stating that worker assumes usual risks and perils incident to employment, but not the extraordinary and unusual risks of employment); *Baltimore & O.R.R. v. Whitacre,* 124 Md. 411, 429, 92 A. 1060 (1915) (stating that employee assumes the risk of all obvious dangers, but not those arising from the employer's negligence); *Frizzell v. Sullivan,* 117 Md. 388, 390, 83 A. 651 (1912) (stating that an employer may not invoke assumption of risk as a defense until he has performed his duty of supplying the employee a reasonably safe work place), so too are there limits placed on what an individual will reasonably risk when he enters into an in gross sale. From early times, the court has repeatedly admonished that it will scrutinize unreasonably large discrepancies in quantity when reviewing in gross contracts. *E.g. Jones,* 2 Gill at 128 (upholding an in gross contract since "[t]he deficiency in quantity is inconsiderable, and is not of such character as to induce the belief of fraud or mistake"); *Reigart,* 149 Md. at 346, 131 A. 568 (stating that "[W]here there is a substantial defect with respect to the . . . extent, or quality of the estate, which is unknown to the vendee, and in regard to which he is not put upon inquiry, specific performance will not be decreed"); *Musselman v. Moxley,* 152 Md. 13, 17, 136 A. 48 (1927) (declaring that "[a] deficiency unreasonably large may, in itself, at times, suggest or indicate fraud"); *Neavitt,* 155 Md. at 376, 142 A. 109 (explaining that "[n]either party has a remedy against the other for the excess or the deficiency, unless the difference is so great as to afford a presumption of fraud"); *Brodsky,* 196 Md. at 515, 77 A.2d 156 (noting that "in some cases an unreasonably large deficiency in quantity may be an indication of fraud").

■ Although the circuit court determined that the actions of appellees as buyers did not reach the level of fraud, we find disturbing the circumstances surrounding the transaction. First, the discrepancy in quantity was not minor,

but a forty percent variation. Second, from the very beginning, appellees possessed the knowledge that the actual square footage of the parcel substantially exceeded the amount recited in the contract for sale and the amount which appellant thought he was selling. Specifically, appellee Dr. Faust admitted that he knew the size of the lot to be about 21,000 or 22,000 square feet.[2] Third, appellant compiled considerable information regarding the parcel. Numerous surveys indicated that the parcel's size was in the range of 16,000 square feet as recited in the contract. Although the surveys and other data did indicate that the precise size remained in question, these documents in themselves contained nothing that would put an individual on inquiry notice that there might be a gross variance. Fourth, appellant was not the actual owner of the parcel, but was merely the personal representative of the Chaney estate, who had only visited the land and reviewed various surveys and maps.

And finally, appellant's actions during the negotiations indicate that he considered size and the resulting per square foot cost as critical and central to reaching an agreement. Appellant rejected the first offer for $279,000.00 since the price did not provide a minimum of $18.00 per square foot. Appellant's letter of May 28, 1985 clearly stated that if appellees offered a minimum of $18.00 per square foot for the entire 16,000 square foot tract, then he would consider selling the property to them. When appellees increased their offer to $300,000.00, a value of $18.75 per square foot, based on 16,000 square feet, appellant accepted.

From these facts, we think that appellant intended to enter into an in gross contract, but not to assume the risk of extreme variation in quantity. In light of the Maryland

---

**2.** In its opinion, the circuit court reached the factual conclusion that "all parties believed the parcel to contain approximately 16,000 square feet." Evidence in the record, however, demonstrates this determination to be clearly erroneous. By appellees' own admissions during trial, they knew the size of the parcel prior to the execution of the contract for sale.

case law that has attempted over the years to mitigate the harsh effects of in gross sales, we must reverse. In such cases as this one, the circuit court should have either ordered appellees, at their option, to pay for the excess or to rescind the contract *in toto.* In reaching this decision, this court is mindful of the fact that relief to vendors who have entered into an in gross sale is rare. When the vendor happens not to be the true owner, but a fiduciary, and when the buyer possesses prior knowledge of the sale, however, this result is warranted. *See Pratt v. Bowman,*[3] 37 W.Va. 715, 17 S.E. 210, 211–12 (1893) (holding that fiduciary "did not contemplate or intend to risk more than ... such as might reasonably be calculated as within the range of ordinary contingency"); *see also Thomas v. Perry,* 23 F.Cas. 964, 968 (C.C.D.N.J.1811 (No. 13,908)) (holding that in an in gross sale, an excess of 1,000 acres in 2,600 acres, 38% variation, entitled the vendor to equitable relief).

The circuit court erred in directing specific performance of the contract.

JUDGMENT REVERSED;

COSTS TO BE PAID BY APPELLEES.

---

3. The case was overruled on another point in *Newman v. Kay,* 57 W.Va. 98, 49 S.E. 926 (1905). *See* 1 A.L.R.2d, *supra,* at 88–89 n. 6.