THOMAS (PENNSYLVANIA SALT MANUF'G CO. v.). See Case No. 10,956.

---

## Case No. 13,908.

### THOMAS v. PERRY.

[Pet. C. C. 49.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1811.

DEED—LANDS NOT IN POSSESSION—SEIZIN—COVENANT—VENDOR AND PURCHASER—"MORE OR LESS."

1. A deed for lands, out of the possession of the grantor at the time of the execution of the

deed, does not convey the lands; and a covenant of seizin in the deed, is not broken. as to the lands which were then cut of the possession of the grantor.

2. In deeds, where the seizin forms no part of the description of the lands granted. a covenant of seizin applies to the present seizin as well as to the title.

3. Where in a deed the lands sold are said to contain "about so many acres more or less," both the grantor and the grantee consider these words as a representation of the quantity which the grantee expects to purchase. and the grantor expects to sell.

[Cited in Solinger v. Jewett. 25 Ind. 481.]

4. The words "more or less" are intended to cover a reasonable excess or deficit: If the difference between the real and the represented quantity be very great, it would be the duty of a court of equity to correct the mistake.

· [Cited in Stebbins v. Eddy, Case No. 13.342.]

[Cited in Belknap v. Sealey. 14 N. Y. 156; Coughenour v. Stauft. 77 Pa. St. 195; Harrell v. Hill, 19 Ark. 102; Solinger v. Jewett, 25 Ind. 481.]

5. A court of equity, in directing an issue of quantum damnificatus for a violation of a covenant of seizin, will direct that the defendant be allowed to give evidence of the value of the over quantity of lands conveyed by him.

[Cited in brief in Ellmaker v. Franklin Ins. Co., 5 Pa. St. 187.]

The plaintiff [Robinson Thomas] had obtained an injunction to a judgment obtained by the defendant [James Perry] for the last instalment due by the plaintiff, being part of the consideration money for certain lands in New Jersey, sold and conveyed by the defendant to the plaintiff. The ground of equity was, that the covenant of seizin, contained in the deeds, had been violated in consequence of the adverse possessions of sundry persons of various parts of the land sold, at the time the conveyance was made. The cause was argued in April, 1810, when the facts appeared to be as follows: On the 20th January, 1797, Miles Sherbrook, acting under a power of attorney, dated 3d November, 1788, from J. Perry and Thomas Hayes, both of Great Britain, and entitled as joint partners in trade, to certain lands in New Jersey, executed a deed to the complainant, which recited that Perry and Hayes, were in the life-time of the said Hayes, seized of an estate in fee, in sundry tracts of land in Middlesex county, state of New Jersey, part purchased of Brinkerhoof and Kittletas, part purchased in company with P. Corney, and part returned to them in the proprietor's office, containing in the whole about 2,600 acres, "be the same more or less," and that since the giving of the power of attorney by Perry and Hayes, in 1788 (which is recited), the said Hayes had died, having by his will devised his part of the aforesaid lands to the said James Perry. He conveys to the said Thomas, in fee, all the real estate of the said Perry, lying in the aforesaid county and state, whereof the said Perry and Hayes were seized on the 4th July, 1776, or at any time since, and whereof the said Perry is now seized in fee with the following covenants, viz. that Perry is lawfully seized

in fee of the said premises mentioned or intended to be granted, free and clear, &c. Second, that he has good title and lawful authority to grant the same, and that it shall be lawful for said Robinson at all time. quietly, &c. to hold and possess the same, without the hindrance, &c. of any person. And, third, for further assurance at any time during ten years, so as the same do not contain any further or other covenants or warrants than are contained in this deed. The plaintiff, in consequence of the death of Hayes, previous to the execution of the above deed, having required a further assurance, Perry, on the 17th May, 1799, sent to Sherbrook another power of attorney, to enable him to confirm the aforesaid deed, and to comply with the covenants in it. On the 23d October, 1800, Perry, by his said attorney, executed a deed, granting to said Thomas all the land and premises as mentioned in the recital of the first deed, (omitting the words "whereof the said Perry and Hayes were seized on the 4th July, 1776, or since, and whereof the said Perry was then seized,") with covenants of seizin, for quiet enjoyment and warranty.

It appeared, that at the time when the first deed was made, sundry persons were in possession of parts of the land which had been purchased from Brinkerhoof and Kittletas. That some ejectments were brought soon after by Thomas. on the joint demise of himself and Perry; and, after the second deed, he brought ejectments for the residue, on his own demise, in all of which he succeeded; and, in 1807, recovered the possession from all those persons. These persons had entered under surveys made of the lands they had taken into possession, some in 1791, and others at subsequent periods, but prior to the first deed to the plaintiff.

Mr. Williamson and A. Ogden, for plaintiff, contended that although the tracts of land conveyed to the plaintiff, contained more than 2,600 acres, even after deducting the parts claimed by the adverse holders, and which were afterwards recovered, yet, in consequence of the words "more or less," the plaintiff was entitled to the whole, and that the quantity mentioned in the recital was merely descriptive. 1 Caines, 493; 2 Johns. 37; Swift's Essay, 305. Second, that being out of possession of a part of these lands, they did not pass by the deed, and of course the plaintiff's only remedy was on the covenant of seizin. 1 Johns. 159. Possession and seizin are common title terms. 2 Bl. Comm.

On the other side, it was contended by Stockton & Griffith for defendant: First, that the prior possession of these lands was no breach of the covenant of seizin, unless it appeared that the plaintiff was disseized or kept out by elder and better title, the reverse of which was proved by the plaintiff's recovery in ejectment. Covenant of seizin applies to the title only, and not to the possession. 4 Cruise. Dig. 77; Cro. Jac. 304; 4 Johns. 10; 2 Saund. 181, 18; 4 Dall. 438; 1 Vern. 188;

Second, H. Perry was disseized of the lands, for which damages are now sought; then they did not pass by the deed, and of course the covenant of seizin did not apply to them.

WASHINGTON, Circuit Justice, and MORRIS, District Judge, agreed that, as to the lands of which possession had been taken before 1776, (there were two of this kind, viz. Bennett's and Williamson's tracts,) they did not pass by the deed; and of course the covenant of seizin did not apply to them. That the whole cause turned upon the first deed to the plaintiff, the second being merely executed to confirm the first, and made in virtue of the covenant for further assurance; and that it did not operate as a new grant. If, by the death of Hayes, the first power of attorney was revoked, still Perry, who by the will of Hayes had become entitled to the whole estate, ratified the first deed, and empowered his attorney to confirm it; but, not to go further, or to make any new or different grant.

As to the tracts claimed by sundry persons under surveys, from 1791 to 1796, WASHINGTON, Circuit Justice, was of opinion, that if those possessions amounted to actual ousters, under claims of title however defective, the covenant of seizin was broken, (provided such lands passed by the deed, as to which no opinion was then given;) because, in such case it could not be true, as Perry had covenanted, that he was seized. If the eviction had taken place after the deed, the covenant could not have been broken, unless it had been under an elder and better title; but this is very different from the case of a grantor disseized, at the time he covenants that he is seized. It was therefore proper to examine witnesses as to the nature of the dispossession, in order to a final decision.

MORRIS, District Judge, was of opinion, that the possession of these persons, being without title, was merely an intrusion, and did not amount to a disseizin, even although they had built houses, enclosed and cultivated the land, under a claim of title.

The cause was continued, and now came on to be again heard at this term, when it was proved, that the persons in possession of the parcels of land claimed under surveys, in opposition to the plaintiff's title, had lived on the said parcels of land, claiming the same as their own, in virtue of such surveys, from the time they were made; had built dwelling houses, and many of them barns; had cleared the land on parts of it, enclosed them, planted orchards, cultivated the land; been assessed as the owners, and paid the taxes.

Williamson & Ogden contended: First, that the three parcels of land mentioned in the recital of the first deed, whether they contained more or less than 2,600 acres, passed by that deed; and that the words "and whereof the said James Perry is now seized," should either be construed as if a disjunctive had been used, instead of the word "and." or as an averment that he was then seized of the lands, whereof he and Hayes were seized on the 4th of July. 1776, or afterwards; for if those words be construed to restrain the former words, the former words will have no effect at all; and in fact the covenant of seizin will be rendered entirely useless. Second, that the adverse possession of these persons, amounted to a complete ouster and disseizin (Cowp. 218; 1 Johns. 34, 36; 5 Burrows, 2607; 2 Salk. 423), and this, though Perry remained in possession of the residue; possession of a part not being a possession of the whole, where the possession is adverse and amounting to an ouster (2 Caines. 183; 4 Mass. 416; 9 Vin. Abr. 71, 91). The covenant of seizin applies to the possession. Co. Litt. 153; 4 Mass. 408; 2 Mass. 436, 437; 4 Cruise, Dig. 77; [Ramsay v. Lee] 4 Cranch, [8 U. S.] 401. Third, the covenant, that he had power to convey, is also broken; for, being out of possession, the deed was void. 1 Cruise, Dig. 249; 1 Johns. 159. The following cases were also cited: 1 Cruise, Dig. 12, 13, 15; 2 Bl. Comm. 95, 199; Co. Litt. 279; 4 Cruise, Dig. p. 78, § 39; 3 Cruise, Dig. p. 41.

Stockton & Griffith for defendant argued: First. That the deed passed no land but such as the grantor was then seized of, and the covenant can apply to no other. The meaning of it is, that of the land of which he is seized, his estate is lawful and in fee. Second. The grant conveys only 2,600 acres; and the words more or less are intended to cover a small excess or deficit. If the plaintiff claims an abatement for breach of covenant, he is bound to do equity, and allow for the enormous excess, (near 1,000 acres) over and above the 2,600 acres. 2 Hen. & M. 165; 1 Ves. Jr. 221. Third. The plaintiff has sustained no injury which he might not have avoided. He might have recovered in ejectment at once, on the demise of Perry. or himself, and obtained immediately, on motion, orders to stay waste. After recovery in ejectment, his right to the mesne profits, from the time of the demise laid, would have been established by the verdict in ejectment. 2 Burrows, 667. He might have recovered in that action, for all the injury he had sustained by the unlawful possession beyond the mere rents and profits. 3 Wils. 121.

As to the meaning of covenant of seizin, see 2 Sandf. 177; 3 Keb. 755; 4 Johns. 18; 3 Cruise. Dig. 78; Sugd. Powers, 473, 375; 3 Term R. 584; 2 Bos. & P. 13. A dispossession is not a disseizin, without expulsion; it is only an intrusion. 1 Burrows, 107, 108; 16 Vin. Abr. 454, pl. 3.; Salk. 246; 3 Bl. Comm. 169; 1 Cruise. Dig. p. 14, § 45; 6 Com. Dig. 277. An entry and occupation never amounts to a disseizin, unless the right of entry of the rightful owner is taken away, as by time, descent cast, or judgment. In such case, it is a disseizin only at the election of the owner; and a deed or devise by him showing his election not to be disseized. 1 Burrows, 112, 113. But, at all events, however the common

law may be, a man disseized may convey in this state; for, by an act of assembly, passed in 1713, the grantee of an use, is deemed to be in possession as fully, to all intents and purposes, as if livery of seizin had been given; and livery, it is known, clears away all disseizins, where the right of the feoffor is lawful. Shep. Touch. 199; Co. Litt. 49. This statute goes much further than the statute of uses by making the bargainee in, as if he had come in by livery. Such, too, has been the uniform practice and understandings of courts and lawyers in this state; and the recoveries by the plaintiff is one proof amongst many others. Until now it never was questioned.[2] In short, the plaintiff having recovered in ejectment, it is not for him to say, Perry was disseized; for, if disseized, he could not have recovered.

WASHINGTON, Circuit Justice. The opinions delivered on the former hearing, were merely on the operation of the covenant of seizin, in which the judges were divided. I then thought, and still think, that at common law, the covenant of seizin applies to the possession, as well as to the title; and that, if at the time the covenant is entered into, the grantor is disseized, the covenant is broken, how good soever his title may be. The argument has now taken a wider range, and, it is contended, on the one side, and denied on the other; that a deed by the rightful owner puts an end to the disseizin, if it existed at the time; provided his entry was not taken away, and in fact restores the possession. That, in short, it is no objection to the validity of a conveyance, that the grantor is out of possession. Upon these points I do not wish, unless there were necessity, to give an opinion; and in this case there is none. But I would observe, that if the plaintiff's counsel be right, still if the plaintiff could, as soon as he obtained his deed, have brought ejectments. on the joint demise of himself and Perry, as, in one or two instances he did, and recovered; and could have effectually prevented the commission of waste; if the judgments in ejectment would have been conclusive of the right to recover mesne profits, from the time of the demise laid, as they certainly would; how has he sustained an injury, which it was not in his power to have prevented? And, if he might have prevented it, whatever might be his strict legal rights, it is fair to ask where is his equity?

But, the court is of opinion, that upon the strict law of the case. the plaintiff cannot recover; because, if Perry was disseized, or held out adversely, of any part of the land, it did not pass by the deed, and consequently the covenant could not be broken. If, by the laws and usages of this state, or

───────────
[2] Judge Morris confirmed this declaration of the counsel.

otherwise, he was not disseized, then the covenant is not broken. The words which describe the land intended to be conveyed, are, "all the real estate lying in, &c., whereof Perry and Hayes were seized on the 4th July, 1776, or at any time since; and whereof the said Perry is now seized." It is contended by the counsel for the complainant, that the word "and" should be construed a disjunctive; because, if the seizin of Perry and Hayes is at last to resolve itself into the seizin of Perry at the time the deed is made, the previous description of the land is rendered useless, and made to stipulate no more than that he is seized of all that he is seized of. It is very true that the word "and," by restraining the preceding words, deprives them of their effect; but, this of itself is no reason for the alteration in the language which is contended for, if a useful meaning can be given to the words as they stand. Surplusage and tautology are usual in deeds. The preceding words were intended to describe the seizin of Hayes and Perry; the latter, the seizin of Perry. It is unreasonable to suppose, that he contemplated selling land of which he was not seized, or that the plaintiff contemplated buying it; for, upon the doctrine of the common law, contended for on his behalf, the deed would have been void, as to the land of which he was not seized. Much less likely is it, that Perry should mean to use a language that implied a possibility of passing land of which he was not seized; and would superadd a covenant which was broken as soon as entered into. His situation,—a stranger to the land, to the various accidents which might have befallen it, from 1771, when he bought it; to the title of Hayes, under whom he claimed one half, and who might in his life time have sold or been disseized of the whole or a part of it,—all these circumstances were sufficient to induce caution in a prudent man: and if his intention was to convey nothing, but what he might legally part with, he could not have used more appropriate words to express such intention; and the court would go farther than would be warranted, in changing the language which the parties have used. at the risk of defeating that intention. As to the effect of the covenant in the grant, as it is expressed; the meaning is, that the lands of which Perry was seized, and which he thereby conveyed, were held by an absolute title in fee, clear of incumbrances, &c. In deeds, where the seizin forms no part of the description of the land granted, (which it does in this case,) the covenant goes to the present seizin, as well as to the title. In such a deed as this, it goes to the title. only; and in this respect the covenant is sensible and useful. Again, it is contended that the word "and" is merely an affirmation that Perry was then seized of the lands, of which Perry and Hayes had been seized on

the 4th July, 1776, or since. If so, this word is strangely misplaced. The recital contains all the averments in the deed, viz. that the lands were obtained in a particular way, contained so many acres, and that Perry and Hayes, in the life of the latter, were seized of them. Had Perry meant to aver his own seizin of the same, this would have been the place to make it. But it is found in this clause which describes the land intended to be conveyed; and it ought not, therefore, to be construed otherwise than as descriptive, unless the strongest reasons could be assigned. But, it has been shown that those reasons are all the other way.

But, if this point were in favour of the plaintiff, then it is the opinion of the court, that he would not be entitled to the aid of this court, but on the terms of accounting for the excess in the quantity of land, over 2,600 acres. The description of the land sold, is either in the recital, or is expressed by the words which have just been examined. The grant is not of the land mentioned in the recital, but of all the lands in a particular county, whereof Perry and Hayes were seized, and of which Perry was then seized. If the latter words meant only an averment, that he was seized of all the lands whereof Perry and Hayes were seized, and do not restrain the expressions as to the seizin of Perry and Hayes, then the description of the land conveyed in the granting part of the deed, and in the recital, are precisely the same; for the latter describes only lands of which Perry and Hayes were seized. But then an additional description is given, viz. that those lands contained about 2,600 acres. Now this latter description qualifies the former, and if not rendered nugatory by the words in the granting part, "and whereof Perry was then seized," they ought, in construing this deed, to be taken into consideration. It seems to the court, that when the land sold, is said to contain about so many acres, both the grantor and grantee consider these words as a representation of the quantity, which the grantor expects to sell, and the grantee to purchase. The words "more or less," are intended to cover a reasonable excess or deficit. If the difference between the real and the represented quantity be very great, both parties act obviously under a mistake, which it would be the duty of a court of equity to correct; more especially against him who asks the aid of that court. The consequence of this is, that if we are to direct an issue of quantum damnificatus, for breach of the covenants in the deed, we should also direct that the defendant on that issue, should be at liberty to give in evidence, in diminution, or opposition to the damages, the value of land over and above the quantity mentioned in the deed; which would probably be destructive of the plaintiff's claim. Upon the whole, we are of opinion, that the bill ought to be dismissed with costs.