Jenkins, Assignee *vs.* Bolgiano and Wife.

The decree of the Circuit Court will be affirmed with costs to the appellees.

*Decree affirmed.*

(Decided 30 March, 1880.)

GEORGE C. JENKINS, Assignee of THOMAS H. SULLI-VAN· *vs.* JOHN BOLGIANO and Wife. THOMAS H. SULLIVAN *vs.* JOHN BOLGIANO and Wife.

*Deficiency in the Quantity of Ground conveyed by a Deed.*

In 1859, B. purchased at trustee's sale a lot of ground as laid down on a sale-plat of a tract of land belonging to an estate, and described in the deed from the trustee to B., by metes and bounds as fronting a certain number of feet on a street, controlled by a call, and so many on an alley, to be determined by the distance from the point of intersection of the centre of a road with the west side of the alley and the place of beginning. In 1868, B., sold the lot to S., part of the purchase money being paid cash and a redeemable ground rent created for the payment of the balance, a lease being duly executed. The ground rent was extinguished by S. paying the principal in 1873, when a deed in fee was made to him by B. and wife. The description of the property was the same in all these deeds, and the lease and conveyance both referred to the trustee's deed. Shortly after becoming seized of the ground, S. on leasing a part of it discovered that, though he received all the land· contained within the boundaries stated in the deeds, yet the dimensions of the lot were considerably less than those mentioned in the deeds. It appeared that B. knew no more about the location and actual dimensions of the lot than S., and that both had equal means of information. On a bill filed by S. to compel B. to make compensation for the alleged deficiency, it was HELD:

That he was not entitled to relief.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., ALVEY, ROB-INSON and IRVING, J.

*Richard M. Venable,* for the appellant.

A mistake of a fact, (the quantity of the land), which was a material inducement to the purchase, is the ground on which recovery from the vendor of a rateable part of the purchase money is sought in this case. It is not pretended or alleged by either party that there is any mistake in the contract itself, (the lease and deed), but the mistake charged by the appellant lies back of the contract, and relates to a fact which induced the contract.

Where land is sold, and there is a mistake made as to the quantity, equity will grant relief. 1 *Story Ex. Jur., sec.* 141; *Stebbens vs. Eddy,* 4 *Mason C. C.,* 414; *O'Connell vs. Duke,* 29 *Texas,* 299; 1 *Sug. on Vend.,* 324; 2 *Dart. on V. & P.,* 597; *Marbury vs. Stonestreet,* 1 *Md.,* 147, 152, 153; *Mendenhall vs. Steckel,* 47 *Md.,* 453, 464–5; *Couse vs. Boyles,* 3 *Green. Ch.,* 212; *Belknap vs. Sealey,* 2 *Duer,* 570.

Nor is it necessary that there should be a wilful or fraudulent misrepresentation of the quantity by the vendor to justify the interposition of equity. Same authorities and *Phillips vs. Hollister.* 2 *Cold.,* (*Tenn.,*) 269; *Crane vs. Prather,* 4 *J. J. Mar.,* 75; *Kent vs. Carcaud,* 17 *Md.,* 291.

And equity will relieve where the sale is completed by deed and payment of the purchase money, as well as in cases where the contract is merely executory. *Tarbell vs. Bowman,* 103 *Mass.,* 341, 344; *Crane vs. Prather,* 4 *J. J. Mar.,* 75; *O'Connell vs. Duke,* 29 *Texas,* 289; *Quesnel vs. Woodlief,* 2 *Hen. & Munf.,* (*Va.,*) 173 n; *Blessing vs. Beatty,* 1 *Rob.,* (*Va.,*) 287; *Wiley vs. Fitzpatrick,* 3 *J. J. Mars.,* 582; *Mendenhall vs. Steckel,* 47 *Md.,* 453.

The appellee does not allege that there is any mistake in the deeds, and the appellant alleges no such mistake. The case of the appellant is a mistake of fact inducing the contract, and not a mistake in reducing the contract to writing. The deeds, therefore, truly exhibit the intention of the parties. *Mendenhall vs. Steckel,* 47 *Md.,* 453, 464, 465; *Kent vs. Carcaud,* 17 *Md.,* 291.

In the examination of the deeds, the law makes the reasonable presumption that the parties contracted with reference to the quantity of land, and that the amount of the purchase money was fixed with reference to that quantity, unless there is some expression or indication of intention in the deed, repelling this presumption. *Marbury vs. Stonestreet,* 1 *Md.,* 147, 152; *Kent vs. Carcaud,* 17 *Md.,* 291; *Mendenhall vs. Steckel,* 47 *Md.,* 453; *Blessing vs. Beatty,* 1 *Rob.,* (*Va.*) 287; *Couse vs. Boyles,* 3 *Green. Ch.,* 212; 2 *Dart. on V. & P.,* 597.

The expressions usually relied on to repel this presumption are "more or less," "containing by estimation," &c., or some equivalent expression, indicating that the parties to the deed were not aware of the quantity of the land sold, and had contracted for the sale of the land "*in the lump,*" (in gross) and not with reference to the quantity. *Hall vs. Mayhew,* 15 *Md.,* 551, 558; *Marbury vs. Stonestreet,* 1 *Md.,* 147, 152.

No such expressions occur in these deeds. Nor does the clause in the deeds beginning, "being the same lot or parcel of ground, &c.," justify the inference that the sale was the sale of a piece of land which had been bought from Cooke's estate, without regard to its quantity. In a case where a sale was made entirely by a reference to the deed by which the vendor claimed, and there was a defect of quantity, equity granted relief. And so where the sale was by quantity as estimated in an old survey. *Belknap vs. Sealey,* 2 *Duer,* 570, 574; 1 *Sug. on Vend.,* 324.

The parties intended to buy and sell the land described in the deeds. And if there was, in fact, no such lot as was

sold, a case of mistake would be made out without any reference to the treaty or parleying anterior to the execution of the deed.

But the case of the appellant is made still stronger by a reference to the acts and representations of the parties prior to the sale. The exhibition by Bolgiano of a plat was equivalent to a positive and independent representation of quantity. *Marbury vs. Stonestreet*, 1 *Md.*, 147, 152; *Kent vs. Carcaud*, 17 *Md.*, 291; *Belknap vs. Sealey*, 2 *Duer*, 570, 574.

But it is claimed that the fact that this was a lithograph plat of the "Eber F. Cooke trust sale," at which Bolgiano bought the lot in question, and that there was a number of such plats issued to the public at the time of the Cooke sale, in some way prevents the exhibition of it to Sullivan from being equivalent to a representation of quantity by Bolgiano. It is difficult to see on what grounds this claim is based. The plat could only have been exhibited to Sullivan to show him what land Bolgiano was proposing to sell. It was a representation that he had that lot to sell, and it could not possibly make any difference where he got the plat, or how extensively it had been circulated. Sullivan had never before seen the plat.

If the claim is that Bolgiano sold the lot as a lot that he had bought from the Cooke estate, independently of any question of quantity, it is repelled by the deed itself, and is unsupported by any evidence. If an estate be sold at so much *per* acre, and there is a deficiency in the number conveyed, the purchaser will be entitled to compensation, although the estate was estimated at that number in an old survey. 1 *Sug. on Vend.*, 324, *citing Shovel vs. Bogan*, 2 *Eq. Cas. Ab.*, 688.

But there is proof that Bolgiano exhibited to Sullivan another plat, and made representations as to the quantity, notwithstanding Bolgiano's denial.

The condition of the land at the time of the sale also precludes the idea that it was sold *in the lump*. It had no

visible boundaries or monuments marking its situation or extent.

Nor will Bolgiano (without some allegation that there was a mistake in the deed,) he permitted to say that he intended to sell the lot he bought from the Cooke estate, without reference to the quantity of the land. Such evidence would contradict the deeds. Parol testimony is inadmissible to contradict or vary a written contract, except in cases where the pleadings allege that from fraud, mistake or surprise, the written contract does not truthfully set out the real contract into which the parties entered. *Winch vs. Winchester,* 1 *Ves. & Beames,* 378; *Rich vs. Jackson,* 4 *Brown's Ch. C.,* 514, 519; *Smith vs. Vreeland,* 1 *Green Ch.,* 199; *See Mendenhall vs. Steckel,* 47 *Md.,* 465.

It cannot be maintained that there was any *laches* in filing the bill. Where equity is invoked to relieve in a case of mistake, limitations do not begin to run, and there can be no charge of *laches* except from the time of the discovery of the mistake. *Tarbell vs. Cowman,* 103 *Mass.,* 341, 344; *Crane vs. Prather,* 4 *J. J. Mars.,* 75, 77; *McDowell vs. Goldsmith,* 2 *Md. Ch.,* 370; *Marbury vs. Stonestreet,* 1 *Md.,* 147, 160–1; *Partridge vs. Usborne,* 5 *Russ.,* 195; *Crouse vs. Boyles,* 3 *Green Ch.,* 212; *King vs. Wilson,* 6 *Beav.,* 124, 128–9; *Bank vs. Detroit,* 12 *Mich.,* 445; *Blessing vs. Beatty,* 1 *Rob.,* (*Va.,*) 187.

The vendee has the right to rely on the representations (in the deeds and plats) of the vendor as to quantity, and is not chargeable with *laches,* except from the time when he discovers such representation to be untrue. *Marbury vs. Stonestreet,* 1 *Md.,* 147, 161; *Crouse vs. Boyles,* 3 *Green Ch.,* 212.

Even the fact that a purchaser lives in the vicinity of the lot purchased, and sees it daily, and that the boundaries are notorious and visible, does not make him chargeable with *laches* for not informing himself of the quantity. Nor does the fact that a purchaser has lived on a city lot.

*Stebbens vs. Eddy,* 4 *Mass. C. C.,* 414 ; *Crouse vs. Boyles,* 3 *Green Ch.,* 212 ; 2 *Dart. on V. & P.,* 597 ; *King vs. Wilson,* 6 *Beav.,* 124, 128–9.

The quantity of land sold is not a fact, the means of knowing which are available and directly at hand. If it were, there would be no cases in the books allowing an abatement for defects of quantity in land sold. *Ely vs. Stewart,* 2 *Md.,* 408.

In estimating the amount of the appellant's recovery, we calculate the amount of the deficit, and then determine its value at the price fixed by the parties at the time of the sale. *Dart on V. & P.,* 600 ; 4 *Kent Com.,* 477 ; *Fry on Sp. Per.,* 349 ; 17 *Md.,* 291 ; 1 *Munf.* 338, *note ;* 2 *B. Mon.,* 275 ; 1 *Rob., (Va.,)* 287 ; 2 *Hen. & Munf.,* 164. The lot in the present case being a building lot, the amount of the recovery cannot be affected by the character of the soil, &c. 1 *Md,* 147.

*Arthur W. Machen,* for the appellee.

There was no misrepresentation and no mistake in this case to justify the interference of a Court of Equity.

The best evidence of the agreement between the parties is to be found in the solemn deeds deliberately executed between them.

Mr. Sullivan's testimony as to any misrepresentations of quantity made by Mr. Bolgiano beyond the statements of the title deed is fully met by the testimony of Mr. Bolgiano, which, also, is supported by all the probabilities derived from the ordinary course of dealing between intelligent contracting parties selling and buying real estate under circumstances of equality as to the sources and means of knowledge. There is a reasonable presumption that Mr. Bolgiano did not intend, and was not supposed to bind himself beyond the covenants of his deed, nor to give any better assurance of title or quantity to his vendee than he himself possessed, in the deed of Eber F. Cooke.

Proof of mistake must be clear and overwhelming. *Beard's Executor vs. Hubble,* 9 *Gill,* 420 ; *Goldsborough vs. Ringgold,* 1 *Md. Ch. Dec.,* 239 ; *Ellinger vs. Crowl,* 17 *Md.,* 361 ; *Katz vs. Moore,* 13 *Md.,* 566 ; *National Fire Insurance Company vs. Crane,* 16 *Md.,* 260.

The complainant must be guilty of no *laches. Beard's Executor vs. Hubble,* 9 *Gill,* 420 ; *Nelson vs. Hagerstown Bank,* 27 *Md.,* 74.

Where each party had equal means of information equity will not interfere. *Wood vs. Patterson,* 4 *Md. Ch. Dec.,* 339, 340 ; *Groff vs. Rohrer,* 35 *Md.,* 333 ; 1 *Story's Equity Juris.,* secs. 149, 150, 151 ; 2 *Watson's Compendium of Equity,* 1079 ; 2 *Phillips,* 340.

The effect of formal deeds will less easily be disturbed than that of a contract of inferior solemnity. *Beall vs. Greenwade's Adm'rs,* 9 *Md.,* 185.

The fact of the alleged deficiency, or defect of title, is not made out by any satisfactory or competent proof. The appellant does not appear to have been disturbed in his possession ; and all the evidence which has been produced would not sustain an action of ejectment against him.

BARTOL, C. J., delivered the opinion of the Court.

It appears from the record, that at a trustee's sale under a decree, made at the Exchange in Baltimore, on the 10th day of May 1859, of parts of a tract of land known as "the *Cooke Estate,*" the appellee became the purchaser of one of the lots into which the land had been divided as shown by a lithograph plat filed in the chancery proceedings, exhibited at the sale and circulated. The lot so purchased was triangular in shape at the corner of Lanvale Street and Lovegrove Alley, described in the advertisement of sale, as "fronting 94 feet on the former and 216 feet on the latter as laid down on said plat."

The oblique line bounding the lot on the north-west was the outline of the whole tract, and designated on the

plat as the centre of a road 33 feet wide running in a north-easterly direction from Lanvale Street to Lovegrove Alley.

The sale being confirmed, a deed was made to the appellee, by the trustee, on the 7th day of August 1863, conveying the lot in fee, and describing it as " beginning at the north-west corner or intersection of Lanvale Street and Lovegrove Alley, and running thence west, bounding on the north side of Lanvale Street ninety-four feet, to the outline of the whole ground there situate belonging to the estate of said Cooke, and running thence northeasterly with said outline and along the centre of a road thirty-three feet wide, to the west side of Lovegrove Alley, and thence south bounding on the west side of Lovegrove Alley two hundred and sixteen feet to the place of beginning, being a part of the property mentioned and described among the proceedings in the cause," (in which the decree of sale had been passed.)

At that time the lot was unimproved; " it was situated in a deep ravine; Lanvale Street and Lovegrove Alley were not graded or paved in that vicinity, and there were no visible monuments or boundaries to the lot, other than an indistinct trace of an abandoned county road, which formed the hypothenuse of the triangular lot. The property remained substantially in the same condition till the Spring of 1873, the only change being a sewer which was constructed along the ravine, at the expense of Sullivan the appellant, and others through whose land it passed."

In June 1868, the appellee sold the lot to Sullivan for $2800, of which $1000 were paid, and for the accommodation of the purchaser, the balance was suffered to stand upon a lease for 99 years renewable, reserving to the lessor a rent of $108 *per annum*, and redeemable upon payment of $1800, in five years. In the lease the lot is described in the same manner as in the deed executed by the trustee to the appellee, which deed is referred to in the lease

as containing a description of the lot.   On the 14th day
of April 1873, the sum of $1800 being paid, the lot was
conveyed to Sullivan in fee; in this deed the lot is de-
scribed in the same manner as in the lease, which is
therein referred to, and it contains a covenant of *special
warranty.*   A short time after receiving the conveyance
of the reversion, Sullivan leased to a man named Smith a
portion of the lot fronting 18 feet on Lanvale street, when
for the first time, he discovered that the dimensions of the
lot were considerably less than those mentioned in the
lease and deeds; whereupon he demanded of the appellee
to refund a part of the purchase money, or to pay him for
the alleged deficiency, and upon the appellee's refusal to
do so, filed this bill of complaint on the 7th day of March
1874, to compel the appellee to make compensation for the
alleged deficiency.

The ground upon which relief is prayed, as stated in
the bill, is "that to induce the complainant to purchase,
Bolgiano represented to him that the lot was of the dimen-
sions stated in the deed, that before the purchase he ex-
hibited to the complainant the plat, *Exhibit C,* which he
represented to be a correct description of the lot, and that
the complainant in making the purchase, was largely
influenced by the quantity of land in the lot, as the same
appeared from the said plat and deeds, and from Bolgi-
ano's representations; that the amount of purchase money
paid for the lot was determined by the area and dimen-
sions thereof, as shown by the plat and deeds, and by
Bolgiano's representations and not by an inspection of
the ground.

"That prior to the purchase he had no survey made,
nor was he able to determine the exact locality, dimen-
sions or area of the lot by an inspection of the premises;
there being no monuments by which he could ascertain
the bounding lines and abutments thereof, and that he
relied upon the plat (Ex. C,) and the representations so
made by Bolgiano, when he purchased the property."

The bill alleges "that the true area and dimensions of the lot are in fact much less than those stated in the deeds and represented by Bolgiano, and charges that the representations so made to him by Bolgiano, if not made by mistake and ignorance of fact, were fraudulent and intended to defraud the complainant, and relief is claimed whether the same were fraudulent, or were made by mistake of the parties."

*Exhibit C* referred to in the bill is a diagram of the lot made by the appellee, on which are marked lines showing how the same might be sub-divided or laid off into building lots, showing three lots of 20 feet each, fronting on Lanvale street, leaving a lot 34 or 35 feet front at the western angle.

The appellee in his answer " denies that the conveyances to the complainant were in any manner founded upon or connected with the diagram '*Exhibit C*' mentioned in the bill and filed therewith; and alleges that, at or before the time of leasing, he gave to the complainant a copy of the 'sale-plat' of the Cooke property, exhibiting the sub-divisions thereof, the same as that shown to him at the time of his own purchase of the ground in question.

" That he made no representations to the complainant as to the dimensions of the ground so leased as of his own knowledge, but at the time of said leasing and subsequent conveyance in fee, in good faith put him in possession of the same means of information the defendant himself had, namely his title deed from the trustee, and a copy of the plat filed in the equity proceedings.

" Further answering he does not admit that the actual dimensions of the parcel of ground differ from those set forth in the lease; but even if there were any deficiency or falling short in this respect, this defendant would be in no manner answerable therefor, having conveyed the said ground to the complainant, precisely as the defendant received it, the description in the lease and deed to the

complainant, being taken and copied without alteration from the description in the deed from the trustee to the defendant. He denies that the bounds of the land were of such a character as to make the ascertainment of it difficult or inconvenient, on the contrary, the same was and is well defined, being bounded on one side by Lanvale street, on another by Lovegrove Alley, and on the only other side by an open road thirty-three feet wide. He denies all fraud charged in the bill, and says that he made no false statement or representation whatever to the complainant, who had the fullest opportunity, as well when he took the lease, as when he demanded and received the conveyance of the reversion, of having the title of the defendant to the lot of ground, according to said description, examined, and exercised the same." The lease and the deed of April 14th 1873 were prepared by the counsel or conveyancer of the complainant.

An examination of the proof has satisfied us that the charge of fraud is not supported; there is no evidence upon which any imputation of bad faith in the transaction can rest upon the defendant. If the lot has turned out on actual measurement, to be smaller than is indicated by the sale-plat, the deed of the trustee and the other deeds, there is no evidence in the record tending to show that this fact was known to the defendant at the time of the lease, or at any time, until it was disclosed to him by the complainant in 1873; such is his positive testimony. Mr. Needles, a witness for the complainant, was called for the purpose of proving that he had stated, or suggested to the defendant, before the lease was made, that the lot was smaller than represented on the plat; but the witness failed to prove that he made any such statement or suggestion to the defendant.

It appears that the witness was interested in the "Denmead estate," which lay contiguous to the "Cooke estate" on the west, and apprehending the lines might clash or

27                    v. 53.

conflict, approached Bolgiano for the purpose of purchasing the triangular lot in question to square . up the lines and save Mr. Denmead from trouble; but he says he is not positive that he communicated to Bolgiano his reasons for wishing to buy the lot; and being asked if he had any positive knowledge or recollection of having any conversation on the subject of the conflict between the "Denmead" and the "Cooke" titles at the time referred to, answered that he had not.

' We may, therefore, dismiss from our consideration the charge of fraud, or bad faith on the part of the defendant.

With respect to the alleged verbal representations, as to the dimensions of the lot, which the complainant says induced him to purchase. This allegation rests upon the testimony of the complainant; but in this respect he is contradicted by the positive testimony of the defendant, who states that he made no such representations. The *onus* being upon the complainant, and his testimony being counterbalanced by that of the defendant, we must hold that this allegation is not supported. The complainant states that *Exhibit C* was shown to him by the defendant before the contract of purchase was made, accompanied with the statement that it showed the true dimensions of the lot, and that his purchase was made relying upon its accuracy. Here, too, the testimony of the parties is in direct conflict; the defendant states that "*Exhibit C*" was not shown to the complainant till after the sale had been made, and that it had nothing to do with the contract of sale. He states that he gave it, and also "*Exhibit I*," (which is a diagram of the same kind) to Mr. Sullivan some days after he had bought the lot and paid for it.

It appears not only from the positive testimony of the defendant, uncontradicted by that of the complainant, who simply says he does not remember it, that at the time of the original contract, the deed of the trustee showing the nature and extent of defendant's title, together with the

lithograph plat, were handed to the complainant; and his testimony is confirmed by the fact that the lease prepared by the complainant's attorney contains the same description word for word, found in the trustee's deed, and in terms refers to that deed for a description of the property.

It thus appears that the defendant, at the time of the contract, in good faith put the complainant in possession of every fact known to himself touching the location and dimensions of the lot. The dimensions, according to the deeds, depended upon the true location of the centre of the 33 feet road called for in the deeds, which formed the outline of the lot on the northwest, and this was as well known to, or as capable of being ascertained by the complainant as by the defendant.

Under these circumstances, the complainant cannot be heard to say that he was deceived by "*Exhibit C*," even if he is right in his recollection that it was given to him by the defendant before he purchased. The diagram appears to have been made by the defendant, as indicating the mode in which, in his opinion, the lot might be subdivided for the purpose of being improved. But as the complainant was at the same time put in possession of all the facts, upon which this opinion was based, he cannot be heard to say that he was deceived thereby as to the size of the lot. There is no sufficient proof that the diagram was intended to be a representation of the actual dimensions of the lot, or that it was accompanied with any verbal statement or representation to that effect, or that it formed any inducement or foundation for the contract. On this part of the case the testimony of the parties is in direct conflict.

Having in his possession all the information which the defendant possessed, with regard to the title and extent of the property that formed the subject of the contract; there being no false or untruthful representations on that subject; the rights of the complainant must be determined

by the construction and effect of the lease, and the subsequent deed of April 14th 1873.

These papers contain no warranty either express or implied as to the quantity of land sold.

The outlines or boundaries are correctly stated, and it is not pretended that he has not received all the land contained within the designated boundaries.

Though the number of feet on Lanvale street is stated to be 94, this is controlled by the call for the centre of the road, where that line terminates; and in the same manner the true length of the line on the west side of Lovegrove Alley is determined by the distance from the point of intersection of the centre of the road with the west side of the alley, and the place of beginning.

In the absence of fraud, or false representations, inducing him to enter into the contract, the complainant is bound by the terms of his lease and deed, and cannot complain if the lot has turned out to be smaller than he supposed. He purchased the lot in gross according to its metes and bounds as described in the trustee's deed. The rule in such cases is thus stated by Chancellor KENT: "Whenever it appears by definite boundaries, or by words of qualification, as 'more or less' or as 'containing by estimation,' or the like, that the statement of the quantity of acres in the deed, is mere matter of description, or not of the essence of the contract, the buyer takes the risk of the quantity, if there be no intermixture of fraud in the case." 4 *Kent*, 467, (11*th Ed.*)

The same rule is laid down by Judge STORY in *Stebbins vs. Eddy*, 4 *Mason*, 420, and was followed in *Jones vs. Plater*, 2 *G.*, 125; *Stull vs. Hurtt*, 9 *G.*, 446; *Hall vs. Mayhew*, 15 *Md.*, 568, and *Slothower vs. Gordon*, 23 *Md.*, 1.

In *Hall vs. Mayhew* the Court, speaking by LE GRAND, C. J., said: "In Maryland the law is well settled that where quantity does not enter into the *essence* of the contract, in the absence of fraud or misrepresentation, the

Jenkins, Assignee *vs.* Bolgiano and Wife.

purchaser is not entitled to an abatement." In that case the qualifying words "more or less" were used. In this case the same principle applies; the outlines or boundaries of the lot are distinctly stated in the deeds, showing that quantity did not enter into the *essence* of the contract; as tò that the purchaser assumed the risk.

We do not go into the question of the actual size or dimensions of the lot as testified to by the surveyors; because in the view we take of the case, the complainant is not entitled to recover on account of the lot being smaller than he supposed. Its actual dimensions were not known to the defendant, both parties appear to have been mistaken on that subject. In such case, the equitable rule laid down by STORY is applicable: "In like manner, where the fact is equally unknown to both parties; or where each has equal and adequate means of information; or where the fact is doubtful from its own nature; in every such case, if the parties have acted in good faith, a Court of equity will not interpose." 1 *Eq. J., secs.* 150, 151.

Looking to the fact that the purchase was made in June 1868, when the complainant went into possession under the lease, that he took no steps to ascertain the true dimensions of the lot, but rested satisfied with his bargain, purchased the reversion in April 1873 and accepted a deed, leased a part of it to another, and made no complaint till after the lapse of five years from the time of his original purchase; we think there is much force in the objection that there has been *laches* on his part. But without resting our decision on this ground, we are of opinion for the reasons before stated, that the complainant is not entitled to relief. The decree of the Circuit Court will be affirmed.

*Decree affirmed.*

(Decided 30th March, 1880.)